**NELSON CASH REGISTER, INC., Appellant,**

v.

**DATA TERMINAL SYSTEMS, INC., Appellee.**

**Nos. 04–82–00412–CV, 04–82–00457–CV.**

Court of Appeals of Texas, San Antonio.

April 11, 1984.

Rehearing Denied May 3, 1984.

Daniel R. Rutherford, San Antonio, for appellant.

Dale Ossip Johnson, Austin, Roy Keezel, Anthony J. Sadberry, Houston, Luther H. Soules, III, Soules & Cliffe, San Antonio, for appellee.

Before ESQUIVEL, REEVES and TIJERINA, JJ.

## OPINION

REEVES, Justice.

This is an appeal from a lawsuit initiated by appellant, Nelson Cash Register, Inc. [hereinafter Nelson or appellant], against appellee, Data Terminal Systems, Inc. [hereinafter DTS or appellee], and several others who are not parties to this appeal.

The theory underlying appellant's lawsuit was that appellee, acting either alone or in concert with others, set out to, and did, in fact, destroy appellant's business. Appellant alleged both tort and contract causes of action in addition to others which are not germane to this appeal. A jury awarded appellant actual damages, attorney's fees, and exemplary damages, but the trial court disallowed the finding for exemplary damages to which ruling appellant Nelson Cash Register, Inc., brings this appeal.

Appellee appeals from the trial court's judgment awarding appellant actual damages for breach of contract and attorney's fees. Because of the nature of this appeal and appellee's attack on the sufficiency of the evidence, a detailed recitation of the facts is necessary.

Appellant, an established concern in the sale of cash registers, on July 1, 1975, entered into a dealer franchise agreement with appellee. The agreement provided Nelson the right to sell and service electronic cash registers manufactured by DTS in thirty-nine Texas counties. The agreement was subject to termination by Nelson by giving thirty days notice to DTS of its intention to terminate. DTS could terminate the contract if Nelson failed to substantially comply with the contract's provisions or if Nelson became seriously delinquent, insolvent, or filed for bankruptcy.

Nelson and DTS conducted business with each other under the terms of this agreement until November 1, 1977. At that time, a new contract, from which this litigation arose, was executed.

The subsequent agreement differed from the prior agreement in that the term of the contract was for one year, at which time either party could terminate the contract by giving proper notice.

Failure of Nelson to meet its quota was grounds for DTS to seek termination of the contract or require Nelson to seek arbitration as to whether or not the contract should be terminated. The quota called for in the November 1977 contract was not established until February 1, 1978, and thus was unknown to Nelson at the time the contract was executed. Subsequent to the new contract's execution, DTS established a quota for Nelson that was approximately twice the dollar amount of Nelson's prior quota.

After the execution of the November 1, 1977 contract, Nelson contends that a series of problems and difficulties arose between the parties. Nelson pled that the new contract, which he alleges he was forced to sign, opened the door to a conspiracy to put it out of business. This, Nelson contends, was done purposely to enable one of the conspirators to take over Nelson's sales area and customers. The alleged conspirators were DTS, Malloy Cash Register, Inc. and its principal officers, directors, and shareholders, Eugene F. Malloy, and Dennis M. Malloy, Advanced Retail Control Systems, Inc., and Bob Coleman. Dennis M. Malloy and Bob Coleman were the original directors of Advanced Retail Control Systems, Inc., as well as its officers and shareholders. Eugene F. Malloy was an original director. The conspirators, averred Nelson, sometimes acting severally and sometimes jointly, committed the following acts:

(1) That at the time the contract was signed, November 1, 1977, the quota figure establishing the dollar amount to be sold was left open; that the quota establishing an amount at $200,000.00, which was set February 1978, was unreasonable, arbitrary and designed to thwart Nelson's effort in maintaining the dealership; that the purpose of the high quota was to give DTS grounds to cancel Nelson's dealership.

(2) That Bob Coleman, a former major account salesman for DTS in the San Antonio and Houston area, in consort with Malloy Cash Register, Inc. and its principal owners, Eugene F. Malloy and Dennis M. Malloy, formed Advanced Retail Control Systems, Inc., for the specific purpose of taking over the San Antonio area when Nelson lost the dealership contract with DTS.

(3) That DTS embarked upon a course of action whereby it failed to adequately train and teach Nelson's personnel as provided for in the contract so that they could adequately install and maintain the DTS equipment.

(4) That DTS furnished faulty equipment and that the equipment furnished was intentionally delivered late, and that equipment sent back to the factory for repair and was not timely repaired.

These acts and others by the parties, acting in consort, were allegedly done by the conspirators to insure Nelson's loss of the dealership, and thereby permit Advanced to take over the San Antonio area.

Nelson pled, in the alternative, that DTS breached its contract in the particulars enumerated above, all of which prevented Nelson from fulfilling its contractual obligation to the customers of Nelson who had purchased DTS equipment. Pleading further in the alternative, Nelson contended the quota provision in the November 1977 dealership contract, which increased Nelson's quota approximately 100%, was in violation of TEX.BUS. & COM.CODE ANN. § 2.302 (Vernon 1968).

The special issue regarding DTS's liability, and the jury's answer thereto is as follows:

Special Issue No. 1.

Do you find from a preponderance of the evidence that the Defendant DTS failed to faithfully perform the contract of November 1, 1977, with Nelson Cash Register, Inc., in any of the following respects:

|  | | Yes | No |
|---|---|---|---|
| A. | Failing to adequately train Nelson Cash Register's personnel | X | __ |
| B. | Furnish Nelson Cash Register with defective equipment | X | __ |
| C. | Failing to ship equipment, components and/or parts ordered by Nelson Cash Register | X | __ |
| D. | Failing to timely repair equipment sent to the factory by Nelson Cash Register for repair | X | __ |
| E. | Failing to consult with Nelson Cash Register before setting the 1978 quota | X | __ |

Additionally, the jury found:

That such failure was a proximate cause of Nelson's damage.

That as a result of the failure of DTS to faithfully perform the contract, Nelson had been damaged in the sum of $270,000.00.

That Nelson was entitled to attorney's fees of $90,000.00 through the trial court, an additional $7,500.00 through judgment in the Court of Appeals, an additional $4,500.00 through refusal of application for writ of error to the Supreme Court, and $500.00 through final judgment of the Texas Supreme Court.

That DTS had acted willfully or maliciously.

That Nelson should recover $500,000.00 exemplary damages.

The trial court entered judgment awarding Nelson actual damages of $270,000.00 and attorney fees, but denied the exemplary damages.

Nelson's sole point of error is the trial court's refusal to award judgment on the verdict for the exemplary damages. Nelson asserts it has pled, proved and the jury found, that DTS had committed a "tortious breach of contract" in its dealings with Nelson which entitled Nelson to the exemplary damages. Conversely, DTS contends that Nelson is not entitled to its exemplary damages since the court granted its motion for directed verdict that all causes of action against DTS which were

[G]enerally predicated upon said Defendant's [DTS] conspiracies, tortious interference with conduct of Plaintiff's [Nelson's] business, tortious interference

with Plaintiff's contract with said Defendant, violations of the anti-trust laws of the State of Texas, Vernon's Ann.Civ. St., art. 7428 ... be and are withdrawn from the jury and judgment be and is rendered for Defendant Data Terminal Systems, Inc. and against Plaintiff that Plaintiff take nothing by said causes of action.

We note that the written order quoted above partially sustaining DTS's motion for instructed verdict is much broader than either the oral motion presented or the bench ruling obtained at the close of Nelson's case. In deciding this appeal, however, we need not decide either the validity or scope of that order.

Appellant's only objection to the court's charge as it related to the presentation of its case, was that it failed to submit appellant's antitrust theory of recovery to the jury. Appellant submitted two requested issues to the court which were denied, both of which related to appellant's antitrust theory of recovery. The failure to submit these issues is not raised in a point of error and is not before us. Thus, appellant's recovery of exemplary damages must stand or fall on the issues submitted. TEX.R.CIV.P. 279.

■ A breach of contract, standing alone, no matter how malicious or willful, will not support an award of exemplary damages. *Amoco Production Co. v. Alexander*, 622 S.W.2d 563, 571 (Tex.1981); *A.L. Carter Lumber Co. v. Saide*, 140 Tex. 523, 526, 168 S.W.2d 629, 631 (1943); *McDonough v. Zamora*, 338 S.W.2d 507, 513 (Tex.Civ.App.—San Antonio 1960, writ ref'd n.r.e.). To support an award of exemplary damages a breach of contract must be accompanied by a separate and distinct tort which is alleged and proved. *Amoco, supra* at 571; *City Products Corp. v. Berman*, 610 S.W.2d 446, 450 (Tex.1980).

Nelson contends that it pled, and the jury found, a tort which Nelson styles a "Tortious Breach of Contract." We note, however, that all of the cases to which appellant has cited us in support of this theory contain not only a breach of contract, but also a separate and distinct tort. *See, e.g., Southwestern Investment Co. v. Neeley*, 452 S.W.2d 705 (Tex.1970) (conversion); *K.W.S. Manufacturing Co., Inc. v. McMahon*, 565 S.W.2d 368 (Tex.Civ.App.—Waco 1978, writ ref'd n.r.e.) (fraud); *Clark v. Sumner*, 559 S.W.2d 914 (Tex.Civ.App.—Waco 1977, no writ) (trespass); *Briggs v. Rodriguez*, 236 S.W.2d 510 (Tex.Civ.App.—San Antonio 1951, writ ref'd n.r.e.) (fraud). Other cases cited by appellant to support his theory hold that no tort was alleged or proved thus disallowing exemplary damages. *See, e.g., Amoco Production Co. v. Alexander*, 622 S.W.2d 563 (Tex.1981); *City Products Corp. v. Berman*, 610 S.W.2d 446 (Tex.1980); *McDonough v. Zamora*, 338 S.W.2d 507 (Tex.Civ.App.—San Antonio 1960, writ ref'd n.r.e.).

■ We hold that while appellant may have pled a tort such as conspiracy, interference with a contract or interference with a business, no issue on any tort was submitted to the jury. The issue submitted and quoted above merely inquires as to a breach of contract and nothing more. The trial court correctly refused to enter a judgment awarding appellant exemplary damages. Appellant's point of error is overruled.

We now turn to appellee's cross-points of error.

Appellee, in cross-points of error one and two, contends the trial court erred in overruling its motion for instructed verdict, which was presented and ruled on at the close of appellant's case in chief, since there was no evidence of either damages or causation.

■ If, after a motion for instructed verdict is presented to the court and overruled, the movant proceeds and offers evidence, the motion is waived unless reurged. Appellee did not reurge its motion and the error, if any, is waived. *Texas Steel Co. v. Douglas*, 533 S.W.2d 111, 114 (Tex.Civ.App.—Fort Worth 1976, writ ref'd n.r.e.); *Shoppers World v. Villarreal*, 518 S.W.2d 913, 918 (Tex.Civ.App.—Corpus Christi 1975,

writ ref'd n.r.e.). Appellee's cross-points one and two are overruled.

Appellee's cross-point seven is that, "The trial court erred in refusing DTS's requested special issue on damages and submitted an issue on damages to the jury which was the improper measure of damages."

The damage issue submitted by the court read as follows:

Special Issue No. 3.

What amount of money, if any, do you find from a preponderance of the evidence, if paid now in cash, would fairly and reasonably compensate the Plaintiff Nelson Cash Register for its damages, if any, suffered by reason of the failure of DTS to faithfully perform the contract of November 1, 1977, if you have so found?

In connection with this Special Issue, you may consider the following element of damage and none other:

The decrease, if any, in the fair market value of Nelson Cash Register, Inc.

In arriving at your answer to Special Issue No. 3, do not include any sum for Nelson Cash Register, Inc.'s, damages, if any, proximately caused by the failure of Nelson Cash Register, Inc., to avoid or reduce such damages, if any, as a reasonably prudent person would in the exercise of ordinary care under the same or similar circumstances.

Answer in Dollars and Cents, if any

The issue requested by appellee was:

In answering Special Issue No. 3, you hereby are instructed that the term "damages" shall mean the amount of net profits, if any, lost by Nelson Cash Register, Inc. between November 1, 1977 and October 31, 1978 as a direct, natural and proximate result of the failure or failures of Data terminal [sic] Systems, Inc., if any, as found by you in your answer to Special Issue No. 1.

From the the [sic] preponderance of the evidence, what amount, if any, do you find to be the damages to have been incurred by Nelson Cash register [sic], Inc.?

ANSWER: Dollars and Cents.

ANSWER: _____

When an issue included in the court's charge is defective, the proper method of complaint is by objection. *Hernandez v. Montgomery Ward & Co.*, 652 S.W.2d 923, 924 (Tex.1983). An objection to a charge and a request for the submission of an issue are not interchangeable; one will not preserve error where the other is required. *Hernandez, supra* at 925; *Texas Employers' Insurance Association v. Jones*, 393 S.W.2d 305, 307 (Tex.1965); *Clarostat Manufacturing, Inc. v. Alcor Aviation, Inc.*, 544 S.W.2d 788, 793 (Tex. Civ.App.—San Antonio 1976, writ ref'd n.r. e.). Even if we assume the issue submitted by the court inquired as to the wrong measure of damages, appellee's requested issue did not preserve the error since no objection was made that the measure of damages was erroneous. It cannot now be raised for the first time on appeal. *Hernandez, supra; Traylor v. Gray*, 547 S.W.2d 644, 658 (Tex.Civ.App.—Corpus Christi 1977, writ ref'd n.r.e.); *Clements v. Stewart Title Guaranty Co.*, 537 S.W.2d 126, 128–29 (Tex.Civ.App.—Austin 1976, writ ref'd n.r.e.). Cross-point seven is overruled.

Appellee, in cross-point of error three contends the trial court erred in submitting special issue number three (quoted above) because there was no evidence or in the alternative insufficient evidence of damages. "A contention that an issue should not have been submitted ... is subject to only one construction. It can mean only that there is no evidence to warrant submission of the issue...." *Garza v. Alviar*, 395 S.W.2d 821, 824 (Tex.1965). Thus we consider cross-point three solely as a no evidence point.

Cross-point five contends the trial court erred in overruling appellee's amended motion for new trial since there was no evidence or insufficient evidence to support the jury's answer to special issue three on damages. Likewise, cross-point ten complains, in part, that there was no evidence on damages.

In viewing a no evidence point, this Court can consider only the evidence and inferences tending to support the jury's finding and must disregard all evidence and inferences to the contrary. If there is any evidence of probative force to support the finding, it must be upheld. *Garza v. Alviar*, 395 S.W.2d 821 (Tex.1965). On the other hand, in examining a factual insufficiency point, we must consider all of the evidence and uphold the finding unless we conclude it is so against the great weight and preponderance of the evidence as to be manifestly unjust. *In re King's Estate*, 150 Tex. 662, 244 S.W.2d 660 (1951); Calvert, *"No Evidence" and "Insufficient Evidence" Points of Error*, 38 TEX.L.REV. 361 (1960).

Nelson, to prove its damages, called Mr. Robert D. Jones, a business broker and licensed realtor. Mr. Jones' occupation was listing businesses and selling them. The gist of Mr. Jones' testimony was that Nelson Cash Register, Inc., as a going concern, and with the contract to sell DTS cash registers intact, was worth approximately $300,000.00. Nelson was first listed for sale in March of 1978 for a price of $220,-000.00; the $80,000.00 discount related to the fact that the DTS contract was to be cancelled. This testimony was later contradicted by Mr. Jones when he stated the $220,000.00 figure assumed the DTS contract was intact.

Mr. Nelson testified that in his opinion Nelson Cash Register, Inc. had a fair market value of at least $300,000.00 on October 31, 1978. Mr. Nelson further testified that he later sold his business for $10,000.00.

Although we have serious reservations about the form of special issue number three, that point being waived, we hold the evidence both legally and factually sufficient to support the jury's answer that Nelson Cash Register, Inc. decreased in value $270,000.00. Cross-points three and five are overruled. Cross-point ten, insofar as it relates to the sufficiency of the evidence on damages, is overruled.

Next, appellee contends in cross-point four that the trial court erred in submitting special issue number two, which inquired as to causation of damages, in that there was no evidence and insufficient evidence to support its submission. As stated earlier under cross-point three, this is a no evidence point. *Garza v. Alviar, supra.*

Cross-point six contends the trial court erred in overruling appellee's motion for new trial since there is no evidence or insufficient evidence of causation.

Cross-point ten, in part, contends the trial court erred in overruling appellee's motion for judgment n.o.v. in that there is no evidence that the breaches of contract found by the jury in special issue number one caused the damages found in special issue three.

Actual damages may be recovered in an action for breach of contract when the loss is the natural, probable and foreseeable consequence of the defendant's conduct. *Mead v. Johnson Group, Inc.*, 615 S.W.2d 685, 687 (Tex.1981). There must be a causal connection between the alleged breach and the alleged damages resulting therefrom. The absence of such a causal connection will preclude recovery. *LeBlanc, Inc. v. Gulf Bitulithic Co.*, 412 S.W.2d 86, 94 (Tex.Civ.App.—Tyler 1967, writ ref'd n.r.e.).

The only evidence this Court can find to support the finding that DTS's breaches of contract caused a diminution in value of Nelson Cash Register, Inc., comes from the testimony of Frank Nelson. Mr. Nelson stated, "The cumulative effect [of DTS's conduct] was the fact that my business ... just lost a tremendous portion of its value. It put me in jeopardy with my customer base. It created tremendous problems for me, and it created a tremendous cash drain on me." While Mr. Nelson could not identify any particular dollar losses, lost customers or lost sales, he contended that it was an accumulation of all the breaches which, when taken together, ruined his business. We believe this is at least some evidence of causation and overrule cross-point four and cross-points six and ten as they relate to legal insufficiency

of the evidence on causation. We hold, however, the above evidence is factually insufficient to support the jury's finding that the breaches found by the jury are the cause of Nelson's damages. In our opinion, the preponderance of the evidence indicates that any diminution in value of Nelson Cash Register was caused by the cancellation of the DTS contract rather than by its breach.

Both Nelson and its attorney acknowledge that either party could cancel the contract at the expiration of one year, and that DTS was within its rights in so doing.

At the time the contract was cancelled, sale of DTS products represented approximately thirty-six percent (36%) of Nelson's gross sales, the remainder being the sale of Sharp and Esper products. Nelson's expert, Robert Jones, testified the loss of a product representing that amount of gross sales could be devastating to a business.

Additionally, Mr. Nelson testified as follows:

Q: Isn't it correct to say that the basis of your claim for damages, that is, the loss of your business, you are attributing to the fact that your dealership came to a conclusion on October 31 of '78 [the date the contract was cancelled]? Isn't that correct?

A: If you want to say it that way, yes.

Q: Sir, my question to you, is that the basis for the claim that Nelson Cash Register lost its business, in effect?

A: In effect.

To further reinforce our view that the termination rather than the breaches caused Nelson's damages, we note Nelson's counsel stated to the court that "so long as we're a dealer there's no damage."

We sustain that part of appellee's cross-point six which contends the evidence is factually insufficient, and reverse and remand the cause for a new trial.

Because of our disposition of cross-point six, we need not consider cross-points eight, nine and eleven or cross-point ten as it relates to attorney's fees.