In The



Court of Appeals



Ninth District of Texas at Beaumont



________________



NO. 09-08-00065-CV


 _____________________



WILLIAM WHITECOTTON AND JUDITH WHITECOTTON, Appellants



V.



SILVERLAKE HOMES, L.L.C. AND THOMAS HARGROVE, Appellees







On Appeal from the County Court at Law No. 2


Montgomery County, Texas


Trial Cause No. 06-04-03982 CV






MEMORANDUM OPINION


 In this home construction dispute, Silverlake Homes, L.L.C. sued William
Whitecotton and Judith Whitecotton for quantum meruit, and the Whitecottons filed a
counterclaim against Silverlake and Silverlake's president, Tom Hargrove, for breach of
contract, violations of the Deceptive Trade Practices Act, breach of various warranties, fraud
in a real estate transaction, and a declaratory judgment. After a bench trial, the trial court
rendered a judgment against the Whitecottons on their counterclaim and in favor of
Silverlake Homes on its quantum meruit claim. The Whitecottons appeal. Based on a review
of the record and considering the arguments made, we conclude the evidence supports the
judgment and that no reversible error is presented. We affirm the trial court's judgment. 

The RCLA and The RCCA (1)


 The Texas Residential Construction Liability Act (RCLA) applies to "any action to
recover damages or other relief arising from a construction defect, except a claim for
personal injury, survival, or wrongful death or for damage to goods[.]" Tex. Prop. Code
Ann. § 27.002(a)(1) (Vernon Supp. 2008). The RCLA does not create a cause of action. See
Sanders v. Constr. Equity, Inc., 42 S.W.3d 364, 370 (Tex. App.--Beaumont 2001, pet.
denied). At the time of this suit, the RCLA provided that it "prevails" over "any other law,"
including the DPTA or a common law cause of action, when there is a conflict between the
RCLA and the other law. Act of June 2, 2003, 78th Leg., R.S., ch. 458, § 2.02, 2003 Tex.
Gen. Laws 1703, 1723 (amended 2007) (current version at Tex Prop. Code Ann. §
27.002(b) (Vernon Supp. 2008)). (2) 

 The RCLA provides in part that in a claim seeking damages against a contractor for
a construction defect, the contractor is entitled to "make a written offer of settlement" or "an
offer of repair" in accordance with certain specified requirements. See Tex. Prop. Code
Ann. § 27.004(b) (Vernon Supp. 2008). If the settlement offer (3) is unreasonable, the
contractor loses the benefit of a limitation on damages set out in section 27.004(e). SeeTex.
Prop. Code Ann. § 27.004(f) (Vernon Supp. 2008). 

 The Texas Residential Construction Commission Act (RCCA) provides for a state
commission to oversee the registration of homes, homebuilders, and remodelers, to
administer a state-sponsored inspection and dispute resolution process, and to create limited
statutory warranties and building and performance standards. See Tex. Prop. Code Ann. §§
401.001-438.001 (Vernon 2007 & Supp. 2008); In re Hall, No. 09-05-388 CV, 2005 WL
3440620, at *1 (Tex. App.--Beaumont Dec. 15, 2005, orig. proceeding) (mem.op.). The
RCCA provides that before suit may be filed on an action for damages or other relief arising
from a "construction defect," the homeowner or builder must comply with the Act's Subtitle
D, which includes a state-sponsored inspection and dispute resolution process. See Tex.
Prop. Code Ann. § 426.005 (Vernon Supp. 2008), §§ 428.001-.005 (Vernon 2007 & Supp.
2008), § 429.001 (Vernon 2007). 

 The Commission adopted warranties and standards that apply to projects commenced
on or after June 1, 2005. See 10 Tex. Admin. Code § 304.1(b) (2008), § 304.3 (2008) (The
"source" listing at the conclusion of section 304.3 states, "The provisions of this § 304.3
[Limited Warranties] adopted to be effective June 1, 2005, 30 TexReg 669."). Because the
house was completed before June 1, 2005, the warranties established under the TRCCA do
not apply in this case. Hargrove testified he supplied the Whitecottons with a written
warranty; it is not in evidence. Section 401.002 of the RCCA provides that any express
warranty provided in writing by the builder applies in that circumstance, but if there is no
express warranty, the usual and customary residential construction practices in effect at the
time of the construction apply. Tex. Prop. Code Ann. § 401.002 (Vernon Supp. 2008). 

The Issues Asserted


 The Whitecottons raised the following eight issues:

 1. "The court erred when it impliedly held that the DTPA was inapplicable in
this case or was preempted by either the RCLA or the TRCCA."


 2. "The court erred when it impliedly held that the laundry list section, Ch. 17
of the Tex. Bus. & Com. Code was inapplicable in this case. More
specifically, that either one or all of § 17.46(b)(5), § 17.46(b)(7), §
17.46(b)(11), § 17.46(b)(12), §17.46(b)(22) and § 17.46(b)(24) were
inapplicable or that Appellees did not violate those same sections of the Tex.
Bus. & Com. Code." 


 3. "The court erred when it impliedly held that the unconscionability section
of § 17.45(5) was inapplicable in this case or that Appellees did not violate §
17.45(5) Tex. Bus. & Com. Code." 


 4. "The trial court erred when it impliedly held that the Appellees did not
commit common law fraud against Appellants."


 5. "The court erred when it impliedly held that the Appellees did not breach
their construction contract with Appellants."


 6. "The court erred when it impliedly held that the Appellees did not commit
fraud in a real estate transaction - a violation of § 27.01 of the Tex. Bus. &
Com. Code."


 7. "The court erred when it overruled Counter Petitioners' Motion for
Directed Verdict. Appellants re-urge the argument made to the court as
recorded in and RR V4 p 64 - 66." 


 8. "The court erred when it impliedly failed to find that Appellees failed to
overcome the statutory presumption that there were 21 warranty defects as
outlined in the SIRP report. See P-8."


Essentially, in issues one through six and in issue eight, the Whitecottons argue the trial court
erred in its "implied" holdings, and in issue seven they argue generally the court erred in not
granting their "Motion for Directed Verdict."

 The record contains no findings of fact or conclusions of law. When findings of fact
are not requested, or if the request is untimely filed, the trial court's judgment implies all
findings of fact necessary to support it. See Sixth RMA Partners, L.P. v. Sibley, 111 S.W.3d
46, 52 (Tex. 2003); Wal-Mart Stores, Inc. v. Kelley, 103 S.W.3d 642, 645 (Tex. App.--Fort
Worth 2003, no pet.). If a reporter's record is filed, the implied findings are not conclusive,
and an appellant may challenge them for legal and factual sufficiency. See Sixth RMA
Partners, L.P., 111 S.W.3d at 52. Reviewing their arguments, we read appellant's issues as
including legal and factual sufficiency challenges.

 When parties attack the legal sufficiency of an adverse finding on an issue on which
they have the burden of proof, they "must demonstrate on appeal that the evidence
establishes, as a matter of law, all vital facts in support of the issue." Dow Chem. Co. v.
Francis, 46 S.W.3d 237, 241 (Tex. 2001). If a party attacks the legal sufficiency of an issue
on which he did not have the burden of proof, he must show there is no evidence to support
the adverse finding. Croucher v. Croucher, 660 S.W.2d 55, 58 (Tex. 1983). In a legal
sufficiency challenge, we view the evidence in the light most favorable to the verdict or
finding, and credit favorable evidence if reasonable jurors could do so, and disregard
contrary evidence unless reasonable jurors could not. City of Keller v. Wilson, 168 S.W.3d
802, 807 (Tex. 2005). In a factual sufficiency review, a court of appeals will set aside the
verdict only if the evidence supporting the finding is so weak, or the finding is so against the
great weight and preponderance of the evidence, that it is clearly wrong and unjust. Dow
Chem., 46 S.W.3d at 242; Garza v. Alviar, 395 S.W.2d 821, 823 (Tex. 1965).

The Evidence Presented


January 7, 2005, Meeting

 The Whitecottons contracted with Silverlake Homes, LLC, a custom builder, in March
2004 for the construction of a house. Construction began in May, and the Whitecottons
moved into the house in early January 2005. On January 4, 2005, Judith Whitecotton faxed
a memo to Christi Evans, one of the "superintendents" on the job; the memo requested that
certain changes be made to the house and pointed out some "omitted items." Judith
Whitecotton contended Silverlake overcharged the Whitecottons on the change orders. Tom
Hargrove, the principal and sole owner of Silverlake, disputed this claim and also testified
he had completed some change orders for free. Evans indicated she and Hargrove, her father,
met with the Whitecottons on January 7, 2005, and "settled up" with them on all the change
orders. Admitted into evidence at trial was a handwritten document that Evans asserted was
the January 7, 2005, settlement of all change orders. On the document was the notation "pd
1-7-05 . . . $2337.28[.]" Like Evans, Hargrove testified the parties reached an "agreement
settling up on the house," and Judith Whitecotton wrote out a check that evening for
$2,337.28 with the notation for "change orders, etc." handwritten on the check.

 Hargrove and Evans considered this meeting and the document arising out of it as a
final settlement. The Whitecottons did not. At trial, Judith Whitecotton testified that as of
May 2006 she and her husband had not yet closed on the house. She denied that anything
final had taken place. Whitecotton explained the house was not finished, and there were still
items that needed to be corrected. However, Whitecotton also acknowledged she did not
know of any closing besides the January 7 meeting. 

 Hargrove testified that he completed additional warranty work based on new lists he
received from the Whitecottons after the January 7, 2005, meeting. He explained Judith
Whitecotton told him if he did these projects, the Whitecottons would pay for the patterned
concrete on the patio -- a project added by the Whitecottons after the January 7 meeting. 
Hargrove testified the Whitecottons later sent another list that was approximately a page-and-a-half single spaced. By April or May 2006, he had completed all the "punch lists." He
indicated he pressed the Whitecottons for payment on the patterned-concrete-patio project. 
Hargrove filed suit for quantum meruit when they did not pay.

Patterned Concrete

 After the "closing" on January 7, 2005, the Whitecottons asked Silverlake to do some
"patterned concrete work" for a patio. Evans informed the Whitecottons the cost of that
work was $7,781.16. Hargrove testified the patterned concrete was not included in the
contract on the house, while Judith Whitecotton testified the $10,000 of "extras" built into
the contract included the patterned concrete. Later, Whitecotton testified she and her
husband owed between $6,900 and $7,700 for the patio, but the amount was subject to
offsets.

 On appeal, the Whitecottons acknowledge that the difference between the parties over
the cost of the patterned-concrete-patio work is only a few hundred dollars. They dispute
whether the cost of the additional patio work is offset by a proper accounting of the change
orders and the costs borne by the Whitecottons in completing the punch list. The
Whitecottons state, "[We] were never able to calculate the correct amount owed, if any, in
light of the unknown offsets due then as a result of the incorrect accounting of the cost of the
Change Orders and the cost of completing the Punch List."

Change Orders

 The Whitecottons contend that Silverlake did not comply with its own change order
policies. The Purchase Agreement provides that "[t]his contract contains the entire
agreement of the parties, and cannot be changed except by their written agreement"; the
Silverlake Homes Standard Specification Sheet provides that "[a]ll extras are to be paid
directly at the time the selection is made." The record contains detailed testimony concerning
the change orders. The parties dispute whether the January 7, 2005, meeting was a proper
accounting of the change orders. 

Driveway

 The evidence regarding the size and cost of the driveway addition is conflicting. 
Evans and Hargrove testified the Whitecottons asked the "designer" to increase the width of
the driveway to a double wide driveway on the plan. The site plan indicated a double-wide
driveway to the street. Judith Whitecotton testified the original contract included a single
driveway to the street, and she never asked for or approved a double driveway. Evans
testified she and Bill Whitecotton were at the house when the double-wide driveway was
poured. She explained that Bill Whitecotton, knowing the driveway would cost extra, asked
her to make it double wide. Bill Whitecotton testified that he was not in Texas when the
driveway was poured, and that he never signed any change order or authorized the additional
cost for the driveway. 

 Hargrove testified that at the "final settlement" meeting the Whitecottons did not
dispute they had requested the double-wide driveway; instead, they were concerned he was
overcharging them for the extra concrete. The Whitecottons' memo which they brought to
the January 7 meeting supports that conclusion. The Whitecottons contend that Silverlake
violated its own change order policies if an oral change order was made. They also maintain
that the extra 300 square feet of concrete was already paid for out of the $10,000 "extras"
fund. Judith Whitecotton testified Silverlake overcharged them $1,500 on the extra concrete
in the driveway. 

$10,000 Extras in the Contract

 The Whitecottons contend that the actual base price of the house was $211,330, and
the contract included an extra $10,000 on top of that for extras they wanted. Silverlake
maintains that the price of the house was $221,330, and the $10,000 for extras was included
in that price. Regardless, the Whitecottons argue that with a proper accounting, the double-wide driveway is included in the $10,000 of "extras."

Punch Lists

 The Whitecottons assert they delivered their punch list to Silverlake on January 7,
2005, and within a few days Silverlake sent workers to the home to make the repairs or
adjustments. The Whitecottons maintain that ultimately some punch-list items were taken
care of, while others were not. For months, as explained by the Whitecottons, the parties
went through this cycle. It was during this period that Silverlake completed the additional
patio work for which Silverlake demanded approximately $7,700 in payment. The
Whitecottons assert that before they "could make such a payment, Silverlake needed to
complete a final accounting of the change orders as well as complete the punch list that
remained outstanding." 

The DTPA Claims -- SIRP Findings


 The Whitecottons argue in issues one through three that Silverlake's alleged failings 
were violations of the DTPA and constituted unconscionable actions under section 17.50(a)
of the Deceptive Trade Practices Act; they further argue in issue eight that the SIRP findings
were warranty defects not rebutted by Silverlake. See Tex. Bus. & Com. Code Ann. §
17.50(a)(3) (Vernon Supp. 2008). The elements of a DTPA cause of action are as follows: 
(1) the plaintiff is a consumer; (2) the defendant engaged in false, misleading, or deceptive
acts; and (3) these acts constituted a producing cause of the consumer's damage. Doe v. Boys
Club of Greater Dallas, Inc., 907 S.W.2d 472, 478 (Tex. 1995); Tex. Bus. & Com. Code
Ann. § 17.50(a)(1) (Vernon Supp. 2008). Under the RCLA, which governs when the DTPA
conflicts with the RCLA, the plaintiff must prove the acts are a proximate cause of the
plaintiff's damages. See Act of June 2, 2003, 78th Leg., R.S., ch. 458, § 2.02, 2003 Tex.
Gen. Laws 1703, 1723 (amended 2007) (current version at Tex. Prop. Code Ann. §
27.002(b) (Vernon Supp. 2008)); see also Tex. Bus. & Com. Code Ann. § 17.44(b) (Vernon
2002) (Chapter 27 of the Property Code prevails over this subchapter to the extent of any
conflict.). 

 "To prove an unconscionable action or course of action, a plaintiff must show that the
defendant took advantage of his lack of knowledge and 'that the resulting unfairness was
glaringly noticeable, flagrant, complete and unmitigated.'" Bradford v. Vento, 48 S.W.3d
749, 760 (Tex. 2001) (quoting Chastain v. Koonce, 700 S.W.2d 579, 583 (Tex. 1985)); Tex.
Bus. & Com. Code Ann. § 17.45(5) (Vernon Supp. 2008). Although the Whitecottons allege 
certain conduct is unconscionable, they do not explain how the actions of Silverlake and
Hargrove are "grossly unfair" and cite no authority and offer no analysis as to how and why
the alleged conduct constitutes an unconscionable action or course of action. Under Rule
38.1(h), the appellant's brief must contain "a clear and concise argument for the contentions
made, with appropriate citations to authorities and to the record." See Tex. R. App. P.
38.1(h). Reviewing courts are to construe appellate briefs reasonably, yet liberally, so that
the right to appellate review is not lost by waiver, and are to "reach the merits of an appeal
whenever reasonably possible." Perry v. Cohen, 272 S.W.3d 585, 587 (Tex. 2008) (citing
Verburgt v. Dorner, 959 S.W.2d 615, 616 (Tex. 1997)). However, the appellate court should
not make appellants' argument for them, and the court is not required to provide citations to
authorities, find record citations, and make legal analyses for contentions not argued in the
brief. See George v. Houston Eye Associates, No. 14-02-00629-CV, 2003 WL 22232651,
at *3 (Tex. App.--Houston [14th Dist.] 2003, pet. denied) ("It is not the appellate courts
responsibility to create the appellant's argument."). 

 A breach of an express or implied warranty is actionable under the DTPA. See Tex.
Bus. & Com. Code Ann. § 17.44(b) (Vernon 2002), §17.50(a)(2) (Vernon Supp. 2008). 
After Silverlake filed suit for quantum meruit, the Whitecottons requested a SIRP inspection
of the house under the RCCA. See generally Tex. Prop. Code Ann. § 428.001 (Vernon
Supp. 2008). The inspector's report, dated May 13, 2006, found nineteen defects, which, in
effect, were breaches of warranty. Silverlake did not challenge the findings of the SIRP
report. Section 426.008 of the Texas Property Code provides that the "recommendation or
ruling [in the SIRP report] shall constitute a rebuttable presumption of the existence or
nonexistence of a construction defect or the reasonable manner of repair of the construction
defect." See Tex. Prop. Code Ann. § 426.008 (Vernon Supp. 2008). "A party seeking to
dispute, vacate, or overcome that presumption must establish by a preponderance of the
evidence that the recommendation or ruling is inconsistent with the applicable warranty and
building and performance standards." Id. 

 Hargrove testified that he offered to repair the defects found by the inspector in the
SIRP report, but the Whitecottons refused. Judith Whitecotton likewise testified Hargrove
offered to make the repairs, but he was not allowed to do so. Since the offer was not timely,
however, the provisions of Section 27.004 do not affect the Whitecottons' ability to recover
damages. 

 Nevertheless, Chapter 27 does not create a cause of action, and provides that "in an
action to recover damages resulting from a construction defect, the claimant must prove that
the damages were proximately caused by the construction defect." See §§ 27.005-006. 
Section 27.003(b) provides that "[e]xcept as provided by this chapter, this chapter does not
limit or bar any other defense or defensive matter or other defensive cause of action
applicable to an action to recover damages or other relief arising from a construction defect." 
Tex. Prop. Code Ann. § 27.003 (Vernon Supp. 2008). Based on the evidence that Hargrove
would repair the defects, and that the Whitecottons refused to allow him to make the repairs,
the trial court reasonably could conclude that the Whitecottons did not establish, under
section 27.006 of the RCLA, that a breach of warranty under the common law or through the
SIRP report findings caused the Whitecottons' alleged damages. See Tex Prop. Code Ann.
§ 27.006 (Vernon 2000); see Sanders, 45 S.W.3d at 803 ("Plaintiff must obtain a finding of
construction defect, a liability finding under the specific cause of action asserted, a proximate
cause finding, and a finding of damages as defined in RCLA.") 

 As to the alleged DTPA "laundry list" violations, the trial court reasonably could base
its take-nothing judgment against the Whitecottons on the testimony of Hargrave and Evans
concerning the change orders, the driveway, the punch lists, the January 7 "settlement"
agreement, and the Whitecottons' refusal to allow Silverlake on their property to attempt any
repairs of the defects. In a bench trial, the trial judge, as the trier of fact, assigns the weight
to be given testimony, and resolves any conflicts or inconsistencies in the testimony. Young
v. Young, 168 S.W.3d 276, 281 (Tex. App.--Dallas 2005, no pet.); see also McGalliard v.
Kuhlmann, 722 S.W.2d 694, 697 (Tex. 1986). The testimony is conflicting, and the trial
court was free to resolve those conflicts and conclude there were no DPTA violations. The
evidence does not establish all elements of the Whitecotton's DTPA counterclaim as a matter
of law. See City of Keller, 168 S.W.3d at 827. Further, considering all the evidence, the trial
court's failure to find in favor of the DTPA counterclaim is not so weak or so against the
overwhelming weight of the evidence as to be clearly wrong and unjust. We overrule issues
one through three and issue eight.

 Section 27.01 Fraud and Common Law Fraud


 The Whitecottons pled statutory fraud in a real estate transaction under section 27.01
of the Business and Commerce Code. See Tex. Bus. & Com. Code Ann. § 27.01 (Vernon
Supp. 2008). Other than the bare assertion that "Silverlake's attempts to extort monies from
the Whitecottons also constitutes [f]raud[,]" the Whitecottons do not support their assertion
with arguments or case law concerning either statutory fraud or common law fraud. Issues
four and six are overruled. (4) See Tex. R. App. P. 38.1(h). 

 Breach of Contract


 In issue five, the Whitecottons essentially argue that there is evidence Silverlake
breached the contract through defects in construction, breaches of warranty, and overcharges
for work performed. They assert that "Silverlake's attempts to extort monies from [them]
also constitute[ ] breach of contract," and reference oral change orders that they maintain the
contract prohibits. 

 Based on the evidence, the trial court reasonably could conclude that the Whitecottons
prevented Silverlake from performing certain work. Judith Whitecotton testified she would
not allow Hargrove to attempt to repair the defects, though he had offered to so. Hargrove
testified he offered to repair the defects, and he remains willing to do so. The trial court
could reasonably conclude the plaintiffs did not prove a failure by the defendant to perform
the contract without legal excuse, or prove that any damages were a result of defendant's
breach. See generally Hussong v. Schwann's Sales Enterprises, 896 S.W.2d 320, 326 (Tex.
App.--Houston [1st Dist.] 1995, no writ) (elements of breach of contract claim). See also
generally Nelson Cash Register v. Data Terminal, 671 S.W.2d 594, 600 (Tex. App.--San
Antonio 1984, no writ) (causal connection required). Issue five is overruled. 

Issue Seven


 Appellants assert generally in issue seven that the trial court erred in denying their 
motion for "directed verdict." See generally Koepke v. Martinez, 84 S.W.3d 393, 395 (Tex.
App.--Corpus Christi 2002, pet. denied) (when motion is proper). In this bench trial, the
evidence was conflicting and the trial judge as factfinder resolved the conflicts against
appellants. As outlined under the other issues we have addressed, the evidence is sufficient
to support the judgment. The trial court did not err in denying appellants' motion. Issue
seven is overruled.

 The trial court's judgment is affirmed.

 AFFIRMED.

 _________________________________

 DAVID GAULTNEY

 Justice 

 

Submitted on March 2, 2009

Opinion Delivered July 16, 2009 


Before McKeithen, C.J., Gaultney and Horton, JJ.
1. Citations are to the current versions of the RCLA and RCCA unless the specific
provisions at issue require application of the former versions of the statutes. 
2. The RCLA now provides that in any conflict between the RCLA and the RCCA, the
RCCA prevails. Tex. Prop. Code Ann. § 27.002(b).
3. The settlement offer may include an agreement by the contractor to repair. See Tex.
Prop. Code Ann. § 27.004(b) (Vernon Supp. 2008). 
4. Similarly, the Whitecottons present no argument in their brief on their declaratory
judgment cause of action.