ACCEPTED
03-15-00088-CV
5180660
THIRD COURT OF APPEALS
AUSTIN, TEXAS
5/6/2015 4:01:45 PM
JEFFREY D. KYLE
CLERK

No. 03-15-00088-CV

FILED IN
3rd COURT OF APPEALS
AUSTIN, TEXAS
5/6/2015 4:01:45 PM
JEFFREY D. KYLE
Clerk

## IN THE THIRD COURT OF APPEALS
## AUSTIN, TEXAS

### GRAYCO TOWN LAKE INVESTMENT 2007, LP
*Appellant,*

v.

### COINMACH CORPORATION
*Appellee.*

On Appeal from the County Court at Law Number 1
of Travis County, Texas, Trial Court Case No. C-1-CV-08-09655,
Hon. Eric Shepperd, Presiding

## BRIEF OF APPELLANT

Dobrowski, Larkin & Johnson LLP
Frederick T. Johnson
SBN 00785429
Cody W. Stafford
SBN 24068238
Akilah F. Craig
SBN 24076194
4601 Washington Ave, Suite 300
Houston, Texas 77007
**Counsel for Appellant**

**ORAL ARGUMENT REQUESTED**                    May 6, 2015

# IDENTITY OF PARTIES AND COUNSEL

| | |
|---|---|
| **Appellant:** | Grayco Town Lake Investment 2007, LP |
| **Counsel for Appellant:** | Frederick T. Johnson<br>SBN 00785429<br>Cody W. Stafford<br>SBN 24068238<br>Akilah F. Craig<br>SBN 24076194<br>Dobrowski, Larkin & Johnson LLP<br>4601 Washington Ave, Suite 300<br>Houston, Texas 77007 |
| **Appellee:** | Coinmach Corporation |
| **Counsel for Appellee:** | R. Kemp Kasling<br>Kasling, Hemphill, Dolezal &<br>Atwell, LLP<br>301 Congress Avenue, Suite 300<br>Austin, Texas 78701<br><br>J. Bruce Bennett<br>Cardwell, Hart & Bennett, LLP<br>807 Brazos, Suite 1001<br>Austin, Texas 78701 |
| **Trial Court:** | Hon. Eric Shepperd<br>Judge, County Court at Law No. 1<br>Travis County Courthouse<br>1000 Guadalupe, Room 206<br>Austin, TX 78701 |

# TABLE OF CONTENTS

Page

RECORD REFERENCES.................................................................................... x

STATEMENT OF THE CASE..............................................................................xi

STATEMENT REGARDING ORAL ARGUMENT ........................................xii

ISSUES PRESENTED ......................................................................................xiii

STATEMENT OF FACTS .................................................................................... 1

    A.    THE PARTIES. ...................................................................................... 1

    B.    THE 1992 LAUNDRY LEASE. ............................................................... 2

    C.    THE 2002 LAUNDRY LEASE. ............................................................... 2

    D.    GRAYCO PURCHASES REGATTA. ....................................................... 5

    E.    GRAYCO TRIES TO OPERATE REGATTA................................................ 7

    F.    COINMACH'S REVENUES AT REGATTA STEADILY DECLINED. .............................. 8

    G.    GRAYCO IS FORCED TO CLOSE REGATTA............................................. 8

    H.    THE TRIAL. .......................................................................................... 9

SUMMARY OF ARGUMENT .......................................................................... 10

STANDARD OF REVIEW................................................................................ 11

    A.    LEGAL SUFFICIENCY.......................................................................... 11

    B.    FACTUAL SUFFICIENCY...................................................................... 12

C.   Conclusions of law. ..........................................................................................12

LEGAL ELEMENTS OF CAUSES OF ACTION .........................................................13

A.   Breach of contract. .........................................................................................13

B.   Covenant of quiet enjoyment. .......................................................................13

ARGUMENT ....................................................................................................................14

A.   Grayco was a bona fide purchaser and not bound by
     the 2002 Lease. ..............................................................................................14

   1.   The 2002 Lease was an encumbrance. .....................................................15

   2.   Grayco had no notice of the 2002 Lease. ................................................17

      a.   Grayco did not have actual or inquiry notice. ......................................18

      b.   Grayco did not have constructive notice. .............................................20

      c.   The judgment must be reversed. ...........................................................23

B.   Alternatively, even if Grayco was subject to the 2002 Lease,
     the judgment must still be reversed. ..............................................................24

   1.   Grayco's closure of Regatta did not breach the 2002 Lease. ..................25

   2.   Even if Grayco breached the 2002 Lease, Coinmach suffered
        no damages. .............................................................................................27

      a.   The 2002 Lease did not guarantee any revenue or profits
           from Grayco. .........................................................................................28

      b.   Coinmach's alleged profits are too speculative. ..................................30

   3.   Coinmach's damages calculations are legally and factually
        untenable. ................................................................................................32

iv

a. Mr. Kemmerer incorrectly determined when damages began to accrue. ................................................ 32

b. Mr. Kemmerer incorrectly included reimbursement of the lease bonus/decoration allowance. ................................................ 37

c. Mr. Kemmerer's daily average collection determination was arbitrary. ................................................ 37

PRAYER ................................................................................................ 39

# INDEX OF AUTHORITIES

## Cases

*2616 S. Loop L.L.C. v. Health Source Home Care, Inc.*,
    201 S.W.3d 349 (Tex. App.—Houston [14th Dist.] 2006, no pet.) ....... 15

*Abraxas Petroleum Corp. v. Hornburg*,
    20 S.W.3d 741 (Tex. App.—El Paso 2000, no pet.) .............................. 40

*Anadarko E & P Co. v. Clear Lake Pines, Inc.*,
    03-04-00600-CV, 2005 WL 1583506 (Tex. App.—Austin
    July 7, 2005, no pet.) ....................................................................... 17

*Burlington N. & Santa Fe Ry. v. S. Plains Switching, Ltd.*,
    174 S.W.3d 348 (Tex. App.—Fort Worth 2005, pet. denied) .............. 13

*Cain v. Bain*,
    709 S.W.2d 175 (Tex. 1986) ............................................................... 13

*Catalina v. Blasdel*,
    881 S.W.2d 295 (Tex. 1994) ............................................................... 11

*Chandler v. Darwin*,
    281 S.W.2d 363 (Tex. App.—Dallas 1955, no writ) ............................ 20

*City of Beaumont v. Moore*,
    202 S.W.2d 448 (Tex. 1947) ............................................................... 18

*City of Dallas v. Village of Forest Hills, L.P., Phase I*,
    931 S.W.2d 601 (Tex. App.—Dallas 1996, no writ) ............................ 35

*City of Keller v. Wilson*,
    168 S.W.3d 802 (Tex. 2005) ..................................................... 11, 12, 37

*Colvin v. Alta Mesa Res., Inc.*,
    920 S.W.2d 688 (Tex. App.—Houston, writ denied) ........................... 16

*Cooksey v. Sinder*,
    682 S.W.2d 252 (Tex. 1984) ............................................................... 16

*Flack v. First Nat'l Bank,*
226 S.W.2d 628 (Tex. 1950)..........................................................20, 21

*Hampshire v. Greeves,*
130 S.W. 665 (Tex. Civ. App. 1910), *aff'd*, 143 S.W. 147
(Tex. 1912) .......................................................................................17

*Holmes v. P.K. Pipe & Tubing, Inc.,*
856 S.W.2d 530 (Tex. App.—Houston [1st Dist.] 1993, no writ).........14

*Holt Atherton Indus., Inc. v. Heine,*
835 S.W.2d 80 (Tex. 1992).................................................................35

*HTM Restaurants, Inc. v. Goldman, Sachs & Co.,*
797 S.W.2d 326 (Tex. App.—Houston [14th Dist.] 1990,
*writ denied)*.......................................................................................36

*Kindred v. Con/Chem, Inc.,*
650 S.W.2d 61 (Tex. 1983)..................................................................12

*Latham v. Miller,*
250 S.W.2d 302 (Tex. App.—Austin 1952, no writ) ............................18

*Levine v. Turner,*
264 S.W.2d 478 (Tex. Civ. App.—El Paso 1954, writ dism'd) .............18

*Madison v. Gordon,*
39 S.W.3d 604 (Tex. 2001).......................................................... passim

*Material P'ships, Inc. v. Ventura,*
102 S.W.3d 252 (Tex. App.—Houston [14th Dist.] 2003,
pet denied) .........................................................................................11

*Mathis v. Wherry,*
45 S.W.2d 700 (Tex. Civ. App.—Beaumont 1932, no writ)..................39

*Mead v. Johnson Grp., Inc.,*
615 S.W.2d 685 (Tex. 1981)................................................................40

*Nelson Cash Register, Inc. v. Data Terminal Sys., Inc.,*
671 S.W.2d 594 (Tex. App.—San Antonio 1984, no writ)...................41

*New York Life Ins. Co. v. Miller,*
    114 S.W.3d 114 (Tex. App.—Austin 2003, no pet.) ............................14

*Pace Corp. v. Jackson,*
    248 S.W.2d 340 (Tex. 1955).................................................................34

*Portman v. Earnhart,*
    343 S.W.2d 294 (Tex. App.—Dallas 1960, writ ref'd n.r.e.)................24

*Realty Portfolio, Inc. v. Hamilton* (*In re Hamilton*),
    125 F.3d 292 (5th Cir. 1997) ...............................................................21

*Richardson v. Hughes,*
    146 S.W.2d 255 (Tex. App.—Austin 1940, no writ) ............................21

*Serrano v. Union Planters Bank, N.A.,*
    162 S.W.3d 576 (Tex. App.—El Paso 2004, pet. denied) .....................29

*Smith v. Smith,*
    22 S.W.3d 140 (Tex. App.—Houston [14th Dist.] 2000, no pet.) .........13

*Southwest Battery Corp. v. Owen,*
    115 SW.2d 1097 (Tex. 1938)................................................................34

*Stewart v. Basey,*
    245 S.W.2d 484 (1952)..........................................................................40

*Strong v. Strong,*
    98 S.W.2d 346 (Tex. Comm'n App. 1936, no writ) ..............................26

*Uniroyal Goodrich Tire Co. v. Martinez,*
    977 S.W.2d 328 (Tex. 1998).................................................................12

*Winograd v. Clear Lake City Water Auth.,*
    811 S.W.2d 147 (Tex. App.—Houston [1st Dist.] 1991,
    writ denied).........................................................................................40

*Woodward v. Ortiz,*
    237 S.W.2d 286 (Tex. 1951)..................................................................21

**Statutes**

TEX. PROP. CODE § 13.001(a) ...................................................................20

TEX. PROP. CODE § 13.002 (West 2002) ...................................................24

TEX. PROP. CODE § 5.024...........................................................................17

# RECORD REFERENCES

Appellant uses the following format for citations to the Record:

CR __            Clerk's Record

1 RR __          Volume one of the Reporter's Record

2 RR __          Volume two of the Reporter's Record

3 RR __          Volume three of the Reporter's Record

Ex. P- __        Plaintiff/Appellee's exhibits to the Reporter's Record

Ex. D- __        Defendant/Appellant's exhibits to the Reporter's Record

Ex. C- __        Court's exhibits to the Reporter's Record

## STATEMENT OF THE CASE

This is a contract dispute involving a laundry room lease. The laundry room lessee, Coinmach Corporation ("Coinmach" or "Appellee"), sued the lessor, Grayco Town Lake Investment 2007, LP ("Grayco" or "Appellant"), for alleged breach of the lease. Following a bench trial, the trial court (Hon. Eric Shepperd, presiding) entered judgment in favor of Coinmach, and awarded $67,122.19 in actual damages (mainly lost profits), $19,695.31 in prejudgment interest, and $44,005.14 in attorneys' fees.

## STATEMENT REGARDING ORAL ARGUMENT

Oral argument would be helpful. First, the Court would benefit from the ability to discuss the appeal with counsel because the factual history of the case is somewhat complicated. Second, oral argument will likely save the Court time in understanding and handling the evidence.

# ISSUES PRESENTED

1.      Did the trial court err in entering judgment for Coinmach for breach of the laundry lease when Grayco was not a party to or bound by the contract?

2.      Did Grayco breach any material obligation of the laundry lease, in light of the absence of any restrictions on its use of its own property?

3.      Did Coinmach suffer any damages for any breach of the laundry lease, which did not guarantee revenue?

4.      Did the trial court err by awarding damages to Coinmach that are not supported by the evidence, and were not caused by any alleged breach?

## STATEMENT OF FACTS

This case centers on a laundry lease at the Regatta Apartments ("Regatta"), which was an apartment complex on Riverside Drive in Austin, Texas. The Regatta was owned by Foley Capital Asset, LLC ("Foley") and managed by Bridge Management Company ("Bridge"). Grayco bought Regatta in 2007, was unaware of the terms of the laundry lease encumbering Regatta, and closed Regatta later that year. Coinmach sued Grayco in 2008 for breach of the lease, and argued the lease required Grayco to keep Regatta—and the laundry room—open even if no one wanted to live there or use the laundry machines. The story of the disputed laundry lease, however, begins much earlier than 2007.

## A. THE PARTIES.

Appellant Grayco was a partnership created to develop and revitalize certain commercial property in the Austin area. As part of that effort, Grayco acquired Regatta in 2007.

Appellee Coinmach is a laundry service company. In the 2007 timeframe, Coinmach leased space in residential apartment buildings

1

and hoped residents would use its coin-operated washing and drying machines.

## B.    THE 1992 LAUNDRY LEASE.

In March 1992—long before the parties here were involved with Regatta—McNair's Coin Laundry Company contracted with De Norde Construction Co., then-owner of Regatta, for the lease of a laundry room (the "1992 Lease"). Ex. D-1. **Tab A**. As is customary, the 1992 Lease was filed in the Travis County Real Property Records. *See id.* The 1992 Lease provided that the lessee and lessor would share the gross receipts from the laundry room 50/50, and had a 10-year term that renewed automatically unless notice of termination was given 90 days prior to the expiration date. *Id.* By default, then, the 1992 Lease would be expected to renew in 2002.

## C.    THE 2002 LAUNDRY LEASE.

Ten years later, Coinmach, successor-in-interest to McNair's Coin Laundry Company, and Bridge executed a new laundry lease (the "2002 Lease"). Ex. D-2. **Tab B**. Unlike the 1992 Lease, however, the 2002 Lease was not filed with the Travis County Real Property Records. 2 RR 23:24-24:1. Instead, Bridge and Coinmach executed a Memorandum of

2

Lease on April 22, 2002, which was then filed in the Travis County Real Property Records. Ex. D-4. **Tab C**. Though recorded, the Memorandum of Lease makes no reference to the unrecorded 2002 Lease, which Coinmach never included or identified in the public record. 2 RR 23:21-23.

The terms of the 2002 Lease were similar to the 1992 Lease in some respects, but quite different in others. For instance, like the 1992 Lease, the 2002 Lease contained a 10-year term (expiring in 2012). Ex. D-2, GP 000004. The most notable difference between the two leases is how they divided revenue from the laundry machines among the lessor and lessee. 2 RR 86:18-25. The 2002 Lease contained the following language:

> LESSEE shall be entitled to the right of exclusive installation and operation of the equipment on the above described premises for which LESSEE shall pay LESSOR a rental of Fifty (50%) percent of the gross receipts. The rental will be paid monthly by check to Lessor, provided however, that the Lessee shall always be entitled to receive at minimum compensation $45.00 per machine, per month.

Ex. D-2 GP 000004.

Unlike the 1992 Lease, which divided gross receipts equally between lessor and lessee, the 2002 Lease allowed the lessee

3

(Coinmach) to get the first $45 per machine, per month in gross receipts.[1] 2 RR 86:21-25. If a machine made more than $45, the remainder was divided equally between the lessor and the lessee. *Id.* If a machine did not make $45 in a month, however, lessor was not required to pay lessee the difference. 2 RR 25:4-7; 2 RR 87:1-9. In other words, the $45 was not a monthly guarantee of revenue—it only assured that *if* a machine made revenue, Coinmach received the first dollars up to $45.00. *Id.*

The 2002 Lease also contained the following provision: "Lessee shall have exclusive and quiet use and enjoyment of the premises leased herein during the Lease term." Ex. D-2, GP 000004 (This provision, along with the revenue provision discussed above, forms the basis of Coinmach's two causes of action.).

At the same time they executed the 2002 Lease, Coinmach and Bridge executed a Supplemental Agreement. Under that agreement,

---

[1] Coinmach kept 24 machines—12 washers and 12 dryers—at Regatta. Ex. D-26.

Coinmach paid Bridge a $14,000 lease bonus/decoration allowance. Ex. D-2, GP 000006; Ex. D-3.[2]

## D. GRAYCO PURCHASES REGATTA.

On December 6, 2006, an entity called Grayco Partners entered into a Real Estate Contract for the purchase of Regatta from Foley. Ex. D-5. Nearly six months later, on April 27, 2007, Grayco Partners assigned the Real Estate Contract to Grayco. Ex. D-10. Grayco acquired Regatta on May 8, 2007. Ex. D-11. Additionally, Foley and Grayco executed an Assignment and Assumption of Leases and Service Contracts (the "Assignment"). Ex. D-13. **Tab D**. The Assignment specifically enumerated the Leases and Service Contracts Grayco would acquire from Foley:

---

[2] What, exactly, the lease bonus was used for is unclear. What is clear, however, is that Grayco did not receive any of the $14,000, a fact that will become important later. 2 RR 87:12-24.

5

**Exhibit "B"**

**(Service Contracts)**

1.  Gas Transportation Agreement dated February 19, 2003, with Texas Gas Service Company

2.  Vending Agreement dated January 8, 2003, with Vending Solutions, L.L.C.

3.  Communications Services Agreement dated May 15, 2001, with Grande Communications Networks, Inc.

4.  Contract for Services and Lease Agreement dated March 11, 1992, with Coinmach Corporation (as successor-in-interest of McNair's Coin Laundry Co.)

5.  Service Agreement dated March 28, 2002, with Waste Management of Texas, Inc.

6.  Ad Insertion Contract dated September 30, 2004, with Apartments for Rent

Ex. D-13, GP 000064 (emphasis added). Notably, the 2002 Lease was not included in the assignment. *Id.*

Prior to acquiring Regatta in May 2007, Grayco was unaware of the 2002 Lease. 2 RR 86:1-8. Indeed, during its due diligence, Grayco discovered the 1992 Lease and the Memorandum of Lease in the Travis County records. 2 RR 83:17-24. Grayco reviewed the 1992 Lease, discovered the 10-year term and automatic renewal provisions, and reasonably concluded that the Memorandum of Lease memorialized the expected renewal and extension of the 1992 Lease by the new parties to that agreement, Coinmach and Bridge. That understanding was consistent with, and justified by, the representations in the Assignment. 2 RR 85:14-25. Nothing in the real property records indicated otherwise, and no one informed Grayco differently. 2 RR 85:22-86:8.

### E.     GRAYCO TRIES TO OPERATE REGATTA.

Grayco intended to operate Regatta—and improve the property for its tenants—for at least one year. 2 RR 88:8-24. Grayco even approached Coinmach about renovating the laundry room, which had fallen into disrepair, in an effort to improve conditions and entice residents to use Coinmach's laundry machines. Ex. D-9; Ex. C-1, 17:3-20. However, Grayco was unable to fulfill its plan.

Regatta was beyond saving. 2 RR 90:7-17. The property was plagued by vagrancy, vandalism, crime, and significant deferred maintenance issues. 2 RR 26:25-27:2, 27:11-12, 27:17-19, 89:9-14. Criminal activity was rampant and staff members were fearful of working at Regatta. Ex. C-1, 13:23-10. In fact, Grayco's property managers spent most of their time keeping vagrants out of Regatta. *Id.* Moreover, Regatta's previous owner failed to screen many of the residents, which created a liability issue if Grayco renewed their leases. 2 RR 88:11-25. These issues, of course, took a serious toll on occupancy. When Grayco acquired Regatta, its occupancy was only 50-60%, and declining. Ex. C-1, 28:15-23:29, 29:23-30:1; 2 RR 97:22-98:1.

7

### F.   COINMACH'S REVENUES AT REGATTA STEADILY DECLINED.

Perhaps like the proverbial canary in the mine, Coinmach's revenues from the laundry lease had steadily declined at Regatta, even before Grayco became the owner. In fact, the only month in 2007 when all 24 machines on average made $45 was March. Ex. D-25, GP 000009. Based on Coinmach's collection data, excluding March, there was no month in 2007 in which all 24 machines made $45 each.[3] *Id.* at GP 000008-9.

Indeed, by the time Grayco acquired and began operating Regatta, Coinmach may never have received $45 per machine. 2 RR 25:11-23.

### G.   GRAYCO IS FORCED TO CLOSE REGATTA.

Ultimately, as a result of crime, the condition of the property, and liability concerns, Grayco closed Regatta at the end of October 2007. 2 RR 90:21-91:1. At that time, occupancy was virtually nil. Ex. C-1, 28:15-21, 29:6-8.

After Regatta's closure, Coinmach informed Grayco, for the first time, about the 2002 Lease. 2 RR 86:9-14. Coinmach then claimed Grayco had breached that lease, and demanded nearly $100,000 as

---

[3] Indeed, based on Coinmach's own data, the machines made far less than $45 in most months. Ex. D-25, GP 000008-9.

"damages." Ex. D-22. Nearly a year later, in September 2008, Coinmach sued Grayco for the alleged breach of the 2002 Lease and the Supplemental Agreement between Coinmach and Bridge relating to the $14,000 lease bonus/decoration allowance. CR 213-16.

## H. THE TRIAL.

The case finally proceeded to a one-day bench trial in August 2014. After trial, the court signed a judgment awarding Coinmach $67,122.19 in actual damages, $19,695.31 in prejudgment interest, and $44,005.14 in attorneys' fees. **Tab E.**

Grayco's motion for new trial was overruled by operation of law. **Tab F.** Grayco timely filed this appeal. CR 508-10.

## SUMMARY OF ARGUMENT

The evidence was both legally and factually insufficient to support the judgment against Grayco.

First, Grayco was a bona fide purchaser of Regatta; it was not bound by the unrecorded 2002 Lease. Because Grayco had no obligations under the 2002 Lease, it could not have breached that agreement. Thus, the trial court's award of damages for breach of the lease is error.

Second, even if Grayco had been bound by the 2002 Lease, it did not breach that agreement. Nothing in the 2002 Lease required Grayco to keep Regatta open, maintain any certain occupancy, or force tenants to use Coinmach's laundry machines. As a result, Grayco's closure of Regatta was not a breach.

Third, even if Grayco breached the 2002 Lease, Coinmach sustained no damages because it had no guaranteed revenue.

Fourth, even if Coinmach had sustained damages, its damages calculation was fundamentally flawed and constituted no evidence.

For these reasons, the Court should reverse the judgment against Grayco.

## STANDARD OF REVIEW

The trial court's implied findings are reviewed for legal and factual sufficiency of the evidence using the same standard applied to a jury verdict. *Catalina v. Blasdel,* 881 S.W.2d 295, 297 (Tex. 1994); *see also City of Keller v. Wilson,* 168 S.W.3d 802, 807 (Tex. 2005).

When the appellate record contains a reporter's record, as in this case, the trial court's findings of fact are not conclusive on appeal if a contrary fact is established as a matter of law or if there is no evidence to support the finding. *See Material P'ships, Inc. v. Ventura,* 102 S.W.3d 252, 257 (Tex. App.—Houston [14th Dist.] 2003, pet denied).

## A.    LEGAL SUFFICIENCY.

For a legal sufficiency review, the Court should credit evidence supporting the judgment if reasonable jurors could, and disregard contrary evidence unless reasonable jurors could not. *City of Keller,* 168 S.W.3d at 827. A legal sufficiency point must be sustained if the record reveals: (1) there is a complete absence of evidence of a vital fact; (2) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact; (3) the evidence offered to prove a vital fact is no more than a scintilla; or (4) the evidence

11

established conclusively the opposite of the vital fact. *See Uniroyal Goodrich Tire Co. v. Martinez,* 977 S.W.2d 328, 334 (Tex. 1998). More than a scintilla of evidence exists if the evidence furnishes some reasonable basis for differing conclusions by reasonable minds about a vital fact's existence. *Kindred v. Con/Chem, Inc.*, 650 S.W.2d 61, 63 (Tex. 1983).

## B. FACTUAL SUFFICIENCY.

For a factual sufficiency review, the Court should consider all of the evidence to determine if the finding is so weak or if the evidence to the contrary is so overwhelming that it should be set aside and a new trial ordered. *Burlington N. & Santa Fe Ry. v. S. Plains Switching, Ltd.,* 174 S.W.3d 348, 354 (Tex. App.—Fort Worth 2005, pet. denied). Findings may be overturned if they are so against the great weight and preponderance of the evidence as to be clearly wrong and unjust. *Cain v. Bain,* 709 S.W.2d 175, 176 (Tex. 1986).

## C. CONCLUSIONS OF LAW.

The trial court's conclusions of law are reviewed de novo. *Smith v. Smith*, 22 S.W.3d 140, 143-144 (Tex. App.—Houston [14th Dist.] 2000, no pet.).

## LEGAL ELEMENTS OF CAUSES OF ACTION

Coinmach alleged two causes of action: (1) breach of contract; and (2) breach of the covenant of quiet enjoyment.

### A.    BREACH OF CONTRACT.

The elements of breach of contract are: (1) that a valid contract existed, (2) that the plaintiff performed or tendered performance, (3) that the defendant breached the contract, and (4) that the plaintiff was damaged as a result of the breach. *New York Life Ins. Co. v. Miller*, 114 S.W.3d 114, 121 (Tex. App.—Austin 2003, no pet.).

### B.    COVENANT OF QUIET ENJOYMENT.

A breach of the covenant of quiet enjoyment requires an eviction, actual or constructive, brought about by the acts of the landlord, those acting for the landlord, or those acting with the landlord's permission. *Holmes v. P.K. Pipe & Tubing, Inc.,* 856 S.W.2d 530, 539 (Tex. App.—Houston [1st Dist.] 1993, no writ); *2616 S. Loop L.L.C. v. Health Source Home Care, Inc.,* 201 S.W.3d 349, 360 (Tex. App.—Houston [14th Dist.] 2006, no pet.).

Several legal errors by the trial court resulted in a flawed judgment. Each of the errors is an independent basis to reverse.[4]

## A. GRAYCO WAS A BONA FIDE PURCHASER AND NOT BOUND BY THE 2002 LEASE.

Bona fide purchaser status is a defense against claims and encumbrances of third parties. *See Madison v. Gordon*, 39 S.W.3d 604, 605 (Tex. 2001). A purchaser who pays value for real property without notice of an encumbrance is a bona fide purchaser. *Colvin v. Alta Mesa Res., Inc.*, 920 S.W.2d 688, 691 (Tex. App.—Houston, writ denied) (*citing Cooksey v. Sinder*, 682 S.W.2d 252, 253 (Tex. 1984). A bona fide purchaser takes title free from the encumbrance. *Hampshire v. Greeves*, 130 S.W. 665 (Tex. Civ. App. 1910), *aff'd*, 143 S.W. 147 (Tex. 1912).

Grayco indisputably purchased Regatta in good faith and for value. Therefore, the only issues are (1) whether the 2002 Lease was an encumbrance; and (2) whether Grayco had notice of the 2002 Lease.

---

[4] Both of Coinmach's causes of action fail for the same reasons. Both arise directly from the 2002 Lease, both are dependent on Grayco being bound by that lease, and both gave rise to the same alleged damages (Coinmach sought the same measure of damages for both causes of action.). Thus, both causes of action suffer the same defects, and neither can support the judgment.

Because the 2002 Lease is an encumbrance of which Grayco had no notice, Grayco is not bound by the laundry lease and could not have breached it.

1. **The 2002 Lease was an encumbrance.**

An encumbrance is an interest in realty that diminishes its value and is a burden on its transfer. *Anadarko E & P Co. v. Clear Lake Pines, Inc.*, 03-04-00600-CV, 2005 WL 1583506 (Tex. App.—Austin July 7, 2005, no pet.); *see also* TEX. PROP. CODE § 5.024. Encumbrances include:

> [E]very right to, or interest in, the land which may subsist in third persons, to the diminution of the value of the land, but consistent with the passing of the fee by the conveyance; **anything that impairs the use** or transfer of property or real estate....

*City of Beaumont v. Moore*, 202 S.W.2d 448, 454 (Tex. 1947) (emphasis added). An encumbrance, then, is any burden resting on property itself, or on its title, which tends to lessen its value, or interfere with its free enjoyment. *Latham v. Miller*, 250 S.W.2d 302, 303 (Tex. App.—Austin 1952, no writ). Generally, a restriction as to the use to which premises may be put constitutes an encumbrance. *Levine v. Turner*, 264 S.W.2d 478, 480 (Tex. Civ. App.—El Paso 1954, writ dism'd).

15

According to Coinmach, the language in the 2002 Lease regarding cleaning and maintaining the laundry room, as well as Coinmach's contractual right to quiet enjoyment, prevented Grayco from closing the apartments to redevelop the area, which was Grayco's long-term purpose when it purchased Regatta. 2 RR 33:14-34:7. Coinmach's representative, Ed Greene, testified that Grayco was required to maintain the laundry room and did not have the right to tear the apartment complex down. 2 RR 36:17-37:4. That type of restriction encumbers the property, interferes with its value, and impairs its use.

Indeed, Coinmach's interpretation of the 2002 Lease would prevent Grayco from terminating the 2002 Lease (for any reason, ever), and would prevent Grayco from using the property it purchased for any purpose other than residences with a Coinmach-controlled laundry room. This nonsensical interpretation means Coinmach, mere lessee of a laundry room, would have more control over Regatta than Grayco, the owner. It is difficult to imagine a heftier burden on Regatta's use.

Based on Coinmach's contentions, because it impaired Regatta's use, the 2002 Lease was an encumbrance.

## 2. Grayco had no notice of the 2002 Lease.

At trial, Coinmach argued that the mere fact that the 2002 Lease existed meant Grayco took the property subject to its terms. 2 RR 104:1-5. The trial court apparently agreed. But that is not the law. Notice—whether actual, inquiry, or constructive—was required for Grayco to acquire the property subject to the 2002 Lease. *See Chandler v. Darwin*, 281 S.W.2d 363, 366 (Tex. App.—Dallas 1955, no writ).

Indeed, under Section 13.001 of the Texas Property Code, an unrecorded conveyance of an interest in real property is void as to a subsequent purchaser who purchases the property for valuable consideration and without notice. TEX. PROP. CODE § 13.001(a).

To receive bona fide purchaser protection, a party must acquire the property in good faith, for value, and without notice of any third-party claim or interest. *Madison*, 39 S.W.3d at 606. Notice is defined as information concerning a fact actually communicated to a person, derived from a proper source, or presumed by law to have been acquired. *Flack v. First Nat'l Bank*, 226 S.W.2d 628, 631 (Tex. 1950). Notice can be actual or constructive. *Id.* Actual notice results from personal information or knowledge, as well as those facts which

17

reasonable inquiry would have disclosed. Constructive notice is notice the law imputes to a person not having personal information or knowledge. *Madison*, 39 S.W.3d at 606; *Flack*, 226 S.W.2d at 631-32.

### a. Grayco did not have actual or inquiry notice.

If a party has knowledge of facts that, if reasonably pursued, would have disclosed the existence of an unrecorded encumbrance, they will be charged with notice (and bound by the encumbrance). *Richardson v. Hughes*, 146 S.W.2d 255, 258 (Tex. App.—Austin 1940, no writ). This is known as inquiry notice. *Woodward v. Ortiz*, 237 S.W.2d 286, 289 (Tex. 1951); *Realty Portfolio, Inc. v. Hamilton* (*In re Hamilton*), 125 F.3d 292, 299 (5th Cir. 1997) ("A hypothetical purchaser on inquiry notice is chargeable with imputed knowledge of facts that would have been discovered by a reasonably diligent inquiry.").

At trial, there was no evidence Grayco had actual notice of the 2002 Lease. The Assignment executed by Grayco and Foley only referenced the 1992 Lease. Ex. D-13, GP 000064. Further, Grayco's corporate representative, John Britton, testified that Grayco conducted a due diligence search when it purchased Regatta and only discovered the Memorandum of Lease and the 1992 Lease, which was to renew

18

automatically in 2002. 2 RR 83:2-4, 83:17-24. And the Memorandum of Lease did not identify the 2002 Lease, a fact admitted by Mr. Greene. 2 RR 23:21-23. Because of the affirmative representations in the Assignment and the Memorandum of Lease, Grayco reasonably believed that the 1992 Lease renewed and that it governed the relationship between Grayco and Coinmach. In fact, Grayco was not informed of the 2002 Lease until after this dispute arose in late 2007 and early 2008. 2 RR 86:9-14. Therefore, the only evidence is that Grayco did not have actual notice of the 2002 Lease.

Further, inquiry notice cannot be imputed to Grayco using the Memorandum of Lease. Grayco Partners acquired Regatta from Foley. Ex. D-5. Foley subsequently assigned all the leases and services contracts to Grayco on May 8, 2007. Ex. D-13. Foley failed to identify the unrecorded 2002 Lease, and only disclosed the existence of the properly recorded1992 Lease. *Id.* at GP 000064. Prior to the purchase of Regatta, Grayco conducted all aspects of due diligence, none of which revealed the 2002 Lease. 2 RR 83:2-9; 2 RR 83:17-24. Grayco reasonably believed that because the parties to the Memorandum of Lease were different from the parties to the 1992 Lease, the Memorandum of Lease

19

served as notice that the two new parties had adopted and reaffirmed the 1992 Lease, which was set to automatically renew in 2002, the same year the Memorandum of Lease was executed. 2 RR 85:22-25. Even if a duty of inquiry arose based on the Memorandum of Lease, the evidence is undisputed that Grayco diligently inquired and was not made aware of the existence of the 2002 Lease.

### b. Grayco did not have constructive notice.

Purchasers of property are charged with constructive notice of the instruments properly recorded in the county where the property is located. TEX. PROP. CODE § 13.002 (West 2002) ("An instrument that is properly recorded in the proper county is . . . notice to all persons of the existence of the instrument, . . ."). But, while a purchaser is bound with constructive notice of all recorded instruments lying within his chain of title, the record of a deed or instrument laying outside of his chain of title imports no notice. *Portman v. Earnhart*, 343 S.W.2d 294, 297 (Tex. App.—Dallas 1960, writ ref'd n.r.e.).

Importantly, the 2002 Lease—unlike the 1992 Lease—was not filed of record in Travis County (or anywhere else). 2 RR 23:24-24:1. Hence, there was no constructive notice of the 2002 Lease. The 2002

20

Lease, though executed prior to Grayco's acquisition of the property, lay outside of Grayco's chain of title because Coinmach failed to record the instrument. The Memorandum of Lease did not place the 2002 Lease within the chain of title. As previously discussed, the Memorandum of Lease is silent as to which lease it referred, and the only lease on file to which it could reasonably refer was the 1992 Lease. 2 RR 23:21-23. Because constructive notice can only be imputed when instruments are within the chain of title, the unrecorded 2002 Lease—lying outside of the chain of title—imputed no notice to Grayco.

Moreover, the Assignment did not provide Grayco with constructive notice of the 2002 Lease. Rather, the Assignment confirmed Grayco's reasonable belief that Coinmach acquired the 1992 Lease from its predecessor-in-interest and allowed the 1992 Lease to renew for an additional 10 years.

Coinmach also argued that the presence of its laundry machines in the Regatta laundry room was constructive notice to Grayco of the 2002 Lease. Though the law imputes constructive knowledge where a subsequent purchaser has a duty to ascertain the rights of a party in possession, the duty to ascertain arises only if the possession is visible,

21

open, exclusive, and unequivocal. *Madison*, 39 S.W.3d at 606. However, possession that is ambiguous or equivocal, which may appear subservient or attributable to the possession of the holder of the legal title, is not sufficiently indicative of ownership to impute constructive notice. *Id.* Additionally, when an occupant's possession is consistent or compatible with another's ownership assertion, the occupant's possession cannot be said to be unequivocal. *Id.* at 607; *Strong v. Strong*, 98 S.W.2d 346, 350 (Tex. Comm'n App. 1936, no writ). In that case, no notice is imputed.

Here, Coinmach's possession was arguably open and visible, based on the presence of its laundry machines in the laundry room. Importantly, however, Coinmach's open and visible possession was compatible with the 1992 Lease, of which Grayco was aware. There was no indication and no reason for Grayco to believe a subsequent—and substantially different—lease was executed by Coinmach in 2002. The issue is whether Grayco knew of—and was bound by—the 2002 Lease, which was not recorded and not provided to Grayco. Even if Grayco was aware that a laundry lease existed, that does not mean Grayco had constructive knowledge that the unrecorded 2002 Lease existed or what

22

its terms were. Indeed, the sole evidence available to Grayco was that the only laundry lease was the properly recorded 1992 Lease. Based on the information available through diligent search and inquiry, Grayco reasonably determined Coinmach's rights, if any, arose out of the 1992 Lease.

Further, the mere presence of Coinmach's laundry machines does not qualify as "unequivocal possession" of the premises that was incompatible with Grayco's reasonable understanding that only the 1992 Lease was in place. Rather, Coinmach's machines confirmed Grayco's understanding that the 1992 Lease was effective and would govern the parties' interactions. So, no constructive knowledge of the 2002 Lease can be imputed to Grayco.

### c.      The judgment must be reversed.

The only evidence presented by either Coinmach or Grayco is that Grayco did not have actual knowledge of the 2002 when it acquired Regatta. 2 RR 36:7-9, 86:1-4, 86:9-14. And there was nothing that put Grayco on inquiry notice of the 2002 Lease. Grayco's belief that the Memorandum of Lease demonstrated Coinmach's adoption and renewal of the 1992 Lease was reasonable. Finally, there was no constructive

23

notice of the 2002 Lease because the 2002 Lease was never filed and the Memorandum of Lease did not identify or refer to the 2002 Lease. 2 RR 36:3-6, 85:14-25. Thus, Grayco proved that it had no notice—actual, inquiry, or constructive—of the 2002 Lease. Because by Coinmach's interpretation the 2002 Lease was an encumbrance and Grayco purchased Regatta without notice, Grayco is not subject to, and is protected from, the 2002 Lease.

Importantly, Coinmach chose to sue Grayco for an alleged breach of only the 2002 Lease. CR 214; 2 RR 84:7-9. Because Grayco was not bound by the 2002 Lease, Coinmach cannot recover damages from Grayco arising out of the 2002 Lease. Further, because Coinmach did not allege breach of the 1992 Lease, Coinmach cannot recover any damages from Grayco arising out of the 1992 Lease.

As a result, the trial court's judgment awarding damages for a breach of the 2002 Lease must be reversed.

B.   ALTERNATIVELY, EVEN IF GRAYCO WAS SUBJECT TO THE 2002 LEASE, THE JUDGMENT MUST STILL BE REVERSED.

Even if Grayco acquired Regatta subject to the terms of the 2002 Lease, the trial court's judgment must still be reversed because (1) the 2002 Lease did not prevent Grayco from closing Regatta, and Grayco

24

could not have breached by doing so; (2) even if Regatta's closure was a breach, Coinmach sustained no damages because there was no guarantee of income; and (3) Coinmach's calculation of damages is so flawed that it constitutes no evidence.

1.      **Grayco's closure of Regatta did not breach the 2002 Lease.**

There is no evidence to support Coinmach's breach of contract claim; thus, the evidence is insufficient to support the judgment. *Serrano v. Union Planters Bank, N.A.*, 162 S.W.3d 576, 580 (Tex. App.—El Paso 2004, pet. denied). Coimach failed to identify a single term, clause, condition or obligation in the 2002 Lease that Grayco breached. In fact, Coinmach's corporate representative admitted to the following, proving Grayco did not breach the 2002 Lease when it closed Regatta:

- There is no provision in the 2002 Lease obligating Grayco to maintain a certain number of occupants at Regatta. 2 RR 26:8-11.

- There is no provision preventing Grayco from tearing down Regatta. 2 RR. 26:12-14.

- There is no provision in the 2002 Lease requiring Grayco to use its best efforts to ensure tenants use the laundry room. 2 RR 26:15-18

Even under Coinmach's interpretation, Grayco could choose to renew—or not renew—as many or as few tenant leases as it wished without beaching any contractual obligations to Coinmach. This interpretation makes Coinmach's current position untenable. If Grayco could exercise its business judgment and decide not to renew all of the tenant leases (as it did), then Coinmach's laundry machines would inevitably make no revenue. Coinmach admits this would not constitute a breach of the 2002 Lease. 2 RR 26:8-11, 35:21-36:2, 36:17-22. Thus, Coinmach would not be entitled to any damages, however they be characterized.

Coinmach's position now, and at trial, is at odds with its admission. If Grayco could properly lease down Regatta—resulting in Coinmach's laundry machines accruing no revenue—then Grayco could close Regatta completely. The result to Coinmach is the same. Yet Coinmach claims without support that only the latter was a breach of the 2002 Lease. That is nonsensical.

Further, Grayco's corporate representative testified many of the tenants of Regatta at the time Grayco acquired the property were unqualified and created liability concerns for Grayco. 2 RR 89:9-25. Grayco could not renew many of the tenant leases for two main reasons:

(1) many of the existing tenants could not pass required background checks; and (2) if Grayco allowed unqualified tenants to live at Regatta, that would violate Grayco's insurance policy. 2 RR 93:1-7. Further, when Grayco acquired the property, occupancy was already low, (between 50-60 percent) and declining. 2 RR 97:22-98:1; Ex. C-1 28:15-21. And, as Grayco's corporate representative clarified, occupancy and tenancy are two different concepts: many of Regatta's *occupants* were vagrants and squatters who did not pay rent. 2 RR 98:4-7.

Because there were no provisions in the 2002 Lease requiring any minimum occupancy or requiring mandatory use of the laundry room by tenants, Grayco's good faith business decision to lease down and ultimately close Regatta was not a breach of the 2002 Lease. The trial court's finding to the contrary is error and requires reversal.

2. **Even if Grayco breached the 2002 Lease, Coinmach suffered no damages.**

Even assuming, *arguendo*, that Grayco could have breached the 2002 Lease, Coinmach could not have suffered damages as a matter of law. And, in any event, Coinmach failed to present legally or factually sufficient evidence of any damages.

27

### a. The 2002 Lease did not guarantee any revenue or profits from Grayco.

As previously discussed, the 2002 Lease did not guarantee Coinmach any minimum monthly earnings for the laundry machines. 2 RR 24:8-11, 24:16-19, 25:4-7. If tenants chose not to use the laundry machines, or if there were no tenants to use them, the laundry machines would accumulate zero revenue, and Coinmach would not be entitled to anything from Grayco. 2 RR 26:15-18, 35:24-36:2. As a result, Coinmach knew when it signed the 2002 Lease that part of its bargain was inherent uncertainty of future revenues and its inherent dependence on the complex's owner's plans for development and leasing. Perhaps a competitor might open a laundromat next door to Regatta and attract tenants with newer machines and cheaper prices. Perhaps Regatta could become a haven for college students who took their clothes home for their parents to launder. Or perhaps Regatta's owner would close the apartments for any number of business reasons. These were all risks Coinmach knowingly accepted in the 2002 Lease. Of course, Coinmach was handsomely rewarded for its risks for many years, and made substantial profits from its machines. Ex. D-25, GP

000010-13.[5] That said, Coinmach never had any contractually-guaranteed revenues, and it knew that from the outset.

As previously discussed, the 2002 Lease gave Coinmach the first $45 per machine, per month (assuming the machine made revenue). Ex. D-2, GP 000004. Coinmach was not guaranteed $45 per machine.[6] 2 RR 24:12-19. Instead, if the machines made $45, Coinmach would be entitled to that amount, and Grayco would receive no compensation for the lease of its laundry room that particular month. 2 RR 24:20-22. If the machines made less than $45, Coinmach received whatever the machines generated. 2 RR 25:4-7. If the machines made more than $45, Coinmach would get $45; then, Coinmach and Grayco would split the remaining gross receipts 50/50. 2 RR 19:2-13. But, of course, there was no guarantee the machines would make *any* revenue, let alone $45.

---

[5] As the Court can see, Coinmach averaged $36,828.38 during the first couple of years of the lease. *See* Ex. D-25. That average later declined for the reasons discussed above.

[6] In other words, Grayco would never have to come out of pocket to ensure Coinmach made $45 per machine, per month.

### b. Coinmach's alleged profits are too speculative.

Coinmach's corporate representative agreed that there were many months when none of the machines made $45.[7] 2 RR 25:11-23. Further Coinmach acknowledged that gross receipts had been declining since 2006. 2 RR 19-21. Despite decreasing revenues, Coinmach asked the Court to speculate as to what the revenue would have been, using the assumptions that there would be tenants to use the laundry room and the tenants would, in fact, have used the laundry rooms but for Grayco's decision to lease-down and then demolish Regatta. But a party may not recover damages for breach of contract if those damages are remote, contingent, speculative or conjectural. *Southwest Battery Corp. v. Owen*, 115 SW.2d 1097, 1099 (Tex. 1938); *Pace Corp. v. Jackson*, 248 S.W.2d 340, 348 (Tex. 1955); *City of Dallas v. Village of Forest Hills, L.P., Phase I*, 931 S.W.2d 601, 605 (Tex. App.—Dallas 1996, no writ). Lost profits claimed as damages must be established to a reasonable certainty. *Holt Atherton Indus., Inc. v. Heine*, 835 S.W.2d 80, 84 (Tex. 1992).

---

[7] Thus, Coinmach effectively paid no rent during those months.

Based on the unrefuted testimony from Mr. Britton, occupancy at Regatta was declining due to the terrible condition of the apartments. 2 RR 90:21-25. The conditions—which were present before Grayco acquired the property—were such that vagrants had taken up residence there. 2 RR 98:4-7. Neither Coinmach nor the trial court had any reasonable basis to assume that there would have been tenants at Regatta, or that any tenants there would be willing and able to use the laundry machines through the expiration of the 2002 Lease.

Therefore, Coinmach's claim for damages fails for at least two reasons: (a) there were no provable damages suffered because Coinmach was not entitled to any specific amount of revenue or profits; and (b) any damages Coinmach claims are impermissibly speculative.

Importantly, Coinmach's failure to prove its damages extends to both its breach of contract claim and its breach of the covenant of quiet enjoyment claim. Even assuming that Grayco breached the covenant of quiet enjoyment, Coinmach suffered no damages for the same reasons that it suffered no damages from its breach of contract claim.[8]

---

[8] In reality, Coinmach's claim for breach of the covenant of quiet enjoyment is a breach of contract claim (which is how Coinmach pled it). CR 410, ¶ 3. Indeed, any implied covenant of quiet enjoyment was subsumed within the express terms of the

31

3. **Coinmach's damages calculations are legally and factually untenable.**

Coinmach's sole evidence of damages is the testimony of its expert, John Kemmerer. The trial court erred by accepting Mr. Kemmerer's contradictory, baseless, and assumption-filled testimony, as well as his hopelessly flawed damages calculations. When the assumptions on which an expert's opinion is based conflicts with undisputed evidence, then the expert's testimony lacks any probative value. *City of Keller,* 168 S.W.3d at 813.[9] Because Mr. Kemmerer's testimony was wholly based on unsupported assumptions—and because Coinmach offered no other evidence of damages—there is legally insufficient evidence to support the trial court's damages award.

### a. Mr. Kemmerer incorrectly determined when damages began to accrue.

Mr. Kemmerer incorrectly determined that Coinmach's damages began to accrue in March 2006, more than a year before Grayco acquired Regatta and more than 18 months before Regatta was closed.

---

2002 Lease. *See, e.g., HTM Restaurants, Inc. v. Goldman, Sachs & Co.*, 797 S.W.2d 326, 328 (Tex. App.—Houston [14th Dist.] 1990, *writ denied).*

[9] *I.e.,* "garbage in, garbage out."

The error of this assumption afflicts the entirety of Mr. Kemmerer's calculations, and manifests itself in numerous ways.

First, Mr. Kemmerer testified that the reason damages began to accrue in March 2006 is because Grayco indicated it intended to change the use of the property via email on March 7, 2006. 2 RR 53:21-54:8. The email was authored by an attorney named Bradley Jones and sent to Coinmach. 2 RR 53:21-54:1. Mr. Kemmerer admitted, however:

- that the email does not mention Grayco;
- that he did not know who Mr. Jones was;
- that he did not know whether Mr. Jones worked for Grayco; and
- that he did not know whether Mr. Jones was authorized by Grayco to communicate with Coinmach regarding changing the use of the Regatta.

2 RR 54:3-20, 55:2-6. Further, Grayco's corporate representative testified that Grayco did not hire Mr. Jones and was unaware on whose behalf Mr. Jones was acting when he communicated with Coinmach. 2 RR 82:2-15.

Second, Mr. Kemmerer incorrectly assumed that Grayco's decision not to renew tenant leases, which he claimed started in March 2006, caused the decrease in income from the laundry room, and thus,

Coinmach's damages. Ex. P-7, pg. 3. Mr. Kemmerer admitted, however, he did not review any information regarding how many tenant leases were renewed at the Regatta in March 2006, nor did he review the number of tenant leases that came up for renewal at the end of February 2006. 2 RR 47:8-20. Indeed, Mr. Kemmerer had no information regarding how many leases came up for renewal or were renewed at any time. 2 RR 47:8-20.

In addition, Grayco did not even acquire Regatta until April 2007, more than a year after Mr. Kemmerer began attributing damages to it for breach. Ex. D-10. The undisputed testimony is that Grayco had absolutely no control over whether tenant leases were renewed prior to April 2007. 2 RR 81:11-82:1. Thus, Mr. Kemmerer's "expert" opinion that lost profits beginning in March 2006 were attributable to Grayco is indefensible and mars his calculations and his credibility.

Third, and perhaps most importantly, Mr. Kemmerer began calculating Coinmach's damages before the date even Coinmach claims Grayco breached the 2002 Lease. Coinmach's corporate representative testified that the alleged breach did not occur until October 31, 2007, after Grayco closed and demolished Regatta. 2 RR 32:23-25. Mr.

Kemmerer's opinion, on the other hand, is inconsistent with Coinmach's claims and Texas law.

Actual damages must flow from the wrongful breach of a contract before they can be assessed against the offender, as compensation for the alleged wrong. *Mathis v. Wherry*, 45 S.W.2d 700, 701-02 (Tex. Civ. App.—Beaumont 1932, no writ). Indeed, to recover compensatory damages, the plaintiff must establish that it suffered some pecuniary loss as a result of the breach of the contract. *Stewart v. Basey,* 245 S.W.2d 484, 486 (1952); *Abraxas Petroleum Corp. v. Hornburg*, 20 S.W.3d 741, 758 (Tex. App.—El Paso 2000, no pet.).

The evidence must show that the damages are the natural, probable, and foreseeable consequence of the defendant's conduct. *Mead v. Johnson Grp., Inc.,* 615 S.W.2d 685, 687 (Tex. 1981); *Winograd v. Clear Lake City Water Auth.,* 811 S.W.2d 147, 156 (Tex. App.—Houston [1st Dist.] 1991, writ denied). The absence of this causal connection between the alleged breach and the alleged damages precludes recovery. *Abraxas*, 20 S.W.3d at 758; *Nelson Cash Register, Inc. v. Data Terminal Sys., Inc.,* 671 S.W.2d 594, 600 (Tex. App.—San Antonio 1984, no writ).

Texas law precludes Coinmach from recovering damages from any reduction in laundry machine revenue prior to Grayco's alleged breach. As a matter of law, Grayco could not have breached a contract to which it was not a party, and could not have *caused* Coinmach to suffer lost profits prior to Grayco's acquisition of Regatta. Assuming those damages existed, they could not have flown from, or had any causal connection to, a breach that had yet to occur. The damages awarded in the judgment are unsustainable for this reason. (Mr. Kemmerer's inexplicable decision to base his calculation on this flawed methodology also renders the entirety of his opinions unreliable.)

In short, Coinmach failed to establish a causal link between the decline in revenues prior to Grayco's acquisition of Regatta and Coinmach's damages as a result of Grayco's alleged breach. Thus, there was legally insufficient evidence supporting a damages award that included amounts incurred prior to October 31, 2007. Alternatively, the damages award is against the great weight and preponderance of the evidence, and must be reversed because it is factually insufficient.

### b. Mr. Kemmerer incorrectly included reimbursement of the lease bonus/decoration allowance.

Further, Mr. Kemmerer incorrectly included in his damages calculation an amount for reimbursement of the lease bonus/decoration allowance Coinmach paid to Bridge. Ex. P-7, pg. 3-4. Grayco was not a party to the Supplemental Agreement between Coinmach and Bridge whereby Coinmach agreed to pay Bridge $14,000 as a lease bonus decoration allowance. Ex. D-2, GP 000006. Coinmach's corporate representative admitted that Coinmach did not pay the $14,000 lease bonus to Grayco and he was unaware as to whether Bridge paid any portion of the $14,000 to Grayco when Grayco acquired Regatta. 2 RR 28:2-14. Grayco's corporate representative confirmed that Bridge did not pay Grayco the lease bonus amount. 2 RR 87:7-21. Thus, there is legally insufficient (or, alternatively, factually insufficient) evidence to support a damages award that includes a reimbursement of the $14,000 lease bonus amount.

### c. Mr. Kemmerer's daily average collection determination was arbitrary.

To calculate the damages Coinmach allegedly suffered, Mr. Kemmerer used a daily collection rate of $99.81. Ex. P-7, pg. 4. Mr.

37

Kemmerer explained that $99.81 represented the daily average collections from December 22, 2004 (the first date available) through March 1, 2006, the date Mr. Kemmerer alleged Grayco changed the use. Ex. P-7, pg. 4. However, as discussed above, Grayco could not have changed the use of the Regatta in March 2006 because it did not own or control Regatta at that time. 2 RR 81:20-82:1. Thus, the collection rate used by Mr. Kemmerer is arbitrary, baseless, and only serves to impermissibly inflate the damages calculation.[10]

Because there is no competent evidence to support the amount of damages suffered by Coinmach, the trial court erred in awarding damages based on Mr. Kemmerer's calculations.

---

[10] Mr. Kemmerer took his arbitrary $99.81 daily average collection and extended it through the term of the 2002 Lease to arrive at his ultimate damages number, which was accepted by the trial court. Coinmach utterly failed to provide the trial court with a defensible daily average supported by the evidence (or Texas law).

## PRAYER

The judgment should be reversed and rendered. Alternatively, the judgment should be reversed and remanded for a new trial on damages.

Respectfully submitted,

DOBROWSKI, LARKIN & JOHNSON LLP

By: /s/ Cody W. Stafford
    Frederick T. Johnson
    SBN 00785429
    Cody W. Stafford
    SBN 24068238
    Akilah F. Craig
    SBN 24076194
    4601 Washington Ave, Suite 300
    Houston, Texas 77007
    713.659.2900 – Telephone
    713.659.2908 – Facsimile

COUNSEL FOR APPELLANT GRAYCO TOWN LAKE INVESTMENT 2007, LP

## CERTIFICATE OF COMPLIANCE

I hereby certify that the computer program used to prepare the foregoing Brief of Appellant shows that 7,070 words are in the Brief of Appellant. This word count does not include those words that TEX. R. APP. P. 9.4(i)(1) excludes from such word count. I further certify that the Brief of Appellant was prepared using 14-point font with footnotes typed in 12-point font.

/s/ Cody W. Stafford
Cody W. Stafford

39

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of **Brief of Appellant Grayco Town Lake Investment 2007, LP** has been served on this 6th day of May, 2015 as follows:

VIA CERTIFIED MAIL RETURN RECEIPT REQUEST
AND E-FILING
R. Kemp Kasling
Kasling, Hemphill, Dolezal & Atwell, L.L.P.
301 Congress Avenue, Suite 300
Austin, TX 78701

J. Bruce Bennett
Cardwell, Hart & Bennett, LLP
807 Brazos, Suite 1001
Austin, Texas 78701

*/s/ Cody W. Stafford*
Cody W. Stafford

## APPELLANT'S APPENDIX

1992 Lease (Ex. D-1)............................................................... Tab A

2002 Lease (Ex. D-2)............................................................... Tab B

April 22, 2002 Memorandum of Lease (Ex. D-4).............................. Tab C

Assignment and Assumption of Leases and Service Contract
(Ex. D-13) ........................................................................ Tab D

Final Judgment signed November 6, 2014 (CR 484-86)................... Tab E

Grayco's Motion for New Trial (CR 489-99) .................................... Tab F

# TAB A

DEFENDANT EXHIBIT



*COINMACH*

DOC NO.
97-0.2555
97022551

A-1269
FILM CODE
#138

CONTRACT FOR SERVICES AND LEASE AGREEMENT 0004804645

This Contract and Lease Agreement is made this *11* day of *MARCH*, 1992 by and between De Narde Construction Co. (Owner) whose principal office is located at 228 Aviation, in the City of Fallbrook, California, herein referred to as LESSOR, and McNAIR'S COIN LAUNDRY CO. of Austin, Texas, herein referred to as LESSEE, for the purpose of establishing and maintaining coin-laundry room facilities at Windjammer Apartments, 1201 Town Creek, Austin, Texas, herein referred to as THE PROJECT.

Lease of Laundry Room: LESSOR does hereby lease to LESSEE all present and future laundry room areas located on or at the Project (which are collectively referred to as the "leased premises") and which are located in the real property described below, for the term and on the conditions stated below and on the reverse side hereof, for the following consideration:

(a) The installation and maintenance by LESSEE of the following coin-laundry equipment ("the equipment") and improvements to the leased premises:

12 - A23CD Maytag Washers
6 - ADG23CDD Maytag Dryers

(b) The payment by LESSEE of fifty percent (50%) of the gross receipts collected by LESSEE from the washers and dryers installed by Lessee into the Project, to be paid monthly.

The description of the real property upon which the Project is located is:

Lots five (5) through eight (8) inclusive, Block C, Townlake Plaza, a subdivision in Travis County, Texas, locally known as the Windjammer Apartments, 1201 Town Creek, Austin, Travis County, Texas

LESSEE shall have the right of ingress and egress to and from the leased premises and access to the Project as is necessary to install, service and maintain all equipment installed by LESSEE and to collect receipts therefrom, and LESSEE shall be entitled to the quiet enjoyment of the leased premises during the term hereof and any renewal hereof.

The parties hereto agree that this Contract and Lease Agreement is subject to all of the terms and conditions on the reverse side hereof; Owner/Management Company (as the case may be) warrants that it has the full authority and right to enter into this agreement and lease as evidenced by its signature below.

LESSOR:                              LESSEE:

DE NARDE CONSTRUCTION CO.            McNAIR'S COIN LAUNDRY CO.

BY: _____           BY: _____
Randy Drennen,                       Lloyd O. Herrera,
General Manager                      General Manager

THE STATE OF TEXAS                   THE STATE OF TEXAS
COUNTY OF TRAVIS                     COUNTY OF TRAVIS

This instrument was acknowledged     This instrument was acknowledged
before me on January 11, 1992        before me on 3-11-92
by Randy Drennen, General,           by Lloyd O. Herrera, General
Manager of LESSOR.                   Manager of LESSEE.

_____                _____
Notary Public                        Notary Public

Attachments: ( ) Exhibit A - Drawing of Leased Premises
             (XX) Performance Codicil
             ( ) Non-Disturbance Agreement

D. MARK McGHEE
Notary Public, State of Texas
My Commission Expires
JUNE 10, 1993

D. MARK McGHEE
Notary Public, State of Texas
My Commission Expires
JUNE 10, 1993

REAL PROPERTY RECORDS
TRAVIS COUNTY, TEXAS

11642 0711

EXHIBIT
1
aa    8-20-14

GP 000096

**EXCLUSIVE RIGHTS:** Lessor hereby grants to McNAIR'S COIN LAUNDRY CO., hereinafter referred to as Lessee, an exclusive lease to the leased premises and the exclusive right to operate and provide laundry equipment and services to The Project, (including to the exclusion of Lessor installing equipment in individual apartments). Any amendment to this agreement must be in writing and signed by both parties. Lessee shall have the sole right to set the price for the use of the coin-laundry equipment, but such price shall always be commercially reasonable. Lessee's exclusive lease shall be subject to the use by Lessor's tenants, their invities and guests and access by Lessor.

**GENERAL SERVICE OBLIGATIONS:** Lessee will install, service and maintain the equipment and perform such services as stated in this Contract and Lease Agreement. Lessee at its expense shall maintain the equipment in good repair and working condition at all times.

**OWNERSHIP OF EQUIPMENT:** All equipment, fixtures and furnishings installed by Lessee shall absolutely remain the property of Lessee. Lessor shall take precautions to protect Lessee's property from damage, pilferage and harm other than normal wear and tear and will permit Lessee to remove the equipment and furnishings upon termination of this lease or any renewal hereof.

**SANITATION:** Lessor will maintain the laundry room in good repair and in a clean and sanitary condition, free and clear of all trash and refuse.

**UTILITIES:** Lessor shall at its expense furnish utilities to the leased premises, including necessary and sufficient heat and/or air conditioning, water, drainage and electricity for a laundry room.

**PERSONNEL POLICIES:** All personnel employed by Lessee shall at all times be deemed employees, agents or servants of Lessee. These employees shall comply with rules and regulations at any time promulgated by Lessor for the safe, orderly and efficient conduct of all activities on Lessor's premises.

**INSURANCE:** During the term of this lease, Lessee shall provide and keep in force, comprehensive general liability insurance in amounts not less than $300,000.00 for injury or loss to any one person and $1,000,000.00 for injury or loss in any one occurrence. Lessee shall not be liable to Lessor in any way for any damage to the leased premises including damages to the leased premises resulting from water, flooding, equipment or plumbing failure and/or drainage problems.

**ASSIGNMENTS, SUBLEASING, AND TRANSFER:** Lessee may assign, sublease or transfer this lease and contract in whole or in part. Lessor may not assign this agreement without the written consent of Lessee, however, such consent shall not be unreasonably withheld. This contract shall automatically transfer to and be binding upon any individual, firm or corporation purchasing or acquiring title to the real property herein described. This lease and contract shall be recorded in the Real Property Records. This agreement shall be binding upon the transferees, heirs, and assignees of the parties.

**SPECIAL CONDITIONS:** In the event of Lessor's bankruptcy, insolvency or breach of the conditions of this agreement, Lessee may, at its option, take possession of any equipment or furnishings belonging to Lessee wherever found, with or without notice, and for that purpose, enter upon the premises and remove same without liability of damages, suit, action or any other proceeding.

**COMMENCEMENT AND TERMINATION:** This contract and lease shall commence on the date stated on the front page hereof and shall remain in force for a period of ten (10) years and shall automatically renew for a like period unless notice of cancellation is given 90 days before expiration by certified mail. After one year of operation this lease and contract may be terminated by Lessee, at its option, for unprofitability by giving sixty (60) days written notice to Lessor.

REAL PROPERTY RECORDS
TRAVIS COUNTY, TEXAS

11642  0712

GP 000097

# TAB B

# DEFENDANT EXHIBIT

2

# COINMACH CORPORATION
## LEASE AGREEMENT

STATE OF TEXAS

COUNTY OF TRAVIS

DATE: January 30, 2002

LOCATION #3-6293

Memorandum of agreement between COINMACH CORPORATION, hereinafter called LESSEE, and Bridge Management Co., Owner/or acting with full authority as owner's agent, hereinafter called LESSOR of the property consisting of (182) Apartment Units located at the address commonly known as Regatta ' Apartments, located , 1201 Town Creek Drive , Austin , Texas, 78741.

In consideration of the mutual covenants contained in this Lease, LESSEE and LESSOR agree to the following:

1. LESSOR herewith leases unto LESSEE, and LESSEE hereby rents from LESSOR the laundry room(s) on the premises described above commencing on date of Lease and ending Ten (10) years after Lease Agreement is signed.

2. LESSEE shall be entitled to the right of exclusive installation and operation of the equipment on the above described premises for which LESSEE shall pay to LESSOR a rental of Fifty (50 %) percent of the gross receipts. The rental will be paid monthly by check to Lessor, provided however, that the Lessee shall always be entitled to receive as minimum compensation $45.00 per machine, per month. Deductions from the sum to be paid LESSOR shall include, if and when applicable, any municipal or state license fees and occupational, sales, use rental, personal property or franchise taxes, and refunds to users.

3. LESSOR shall, at its own expense, provide and maintain all necessary electric, gas, water, sewer and all other facilities required to properly operate the equipment, including utility connections. LESSOR shall clean and maintain the premises and promptly notify LESSEE if and when the equipment ceases to operate in a normal manner. LESSEE shall own and maintain the equipment that it installs, without expense to LESSOR.

4. LESSOR agrees to provide sufficient size laundry room(s) with adequate space, which will allow the LESSEE to install an adequate amount of washer(s) and dryer(s). In the event LESSOR requests, in writing, the replacement of fifty percent or more of LESSEE'S laundry equipment during the term of this Lease with new machines, the LESSEE may, upon receipt of said written notice and replacement of the laundry equipment, extend the original term of this Lease for a period of five (5) years. All additional renewal terms shall then be enlarged to incorporate the extended original term. LESSEE reserves the right to install other vending equipment in the premises and to affix reasonable signs or other notices to the walls and equipment.

5. LESSEE shall maintain a reasonable amount of comprehensive general liability and property damage insurance.

6. LESSEE shall have exclusive and quiet use, possession and enjoyment of the premises leased herein during the Lease term.

7. This Lease shall be automatically renewed for successive periods of time unless canceled in writing by certified or registered mail by either party at least one year prior to its expiration.



**EXHIBIT**
**2**

GP 000004

## COINMACH CORPORATION
## LEASE AGREEMENT                                                    -2-

8.  LESSOR and LESSEE agree that in consideration of the provisions of this Laundry Lease Agreement, LESSEE shall be entitled to the right of exclusive installations and rental of any non-metered laundry equipment in the apartment units on the above described premises. This installation and rental shall either be where LESSEE leases the laundry equipment to the owners/owners agent or where LESSEE leases directly to the resident.

9.  LESSEE shall have the right to terminate this Lease, upon written notice to LESSOR, if (a) vandalism, theft, or attempted theft at the premises becomes excessive so as to seriously affect LESSEE'S ability to perform under the Lease, or (b) usage of the equipment in any three (3) consecutive months does not exceed an average of 2 cycles per machine per day.

10. COINMACH CORPORATION, or its assignees, is hereby given a right of first refusal to continue providing laundry service to the premises upon the expiration or termination of this Lease for any reason. LESSOR shall not lease the premises to a LESSEE other than Coinmach Corporation unless (1) LESSOR has first provided Coinmach Corporation with a copy of the executed proposed lease containing bonafide terms of the offer being no less than five years, and (2) within thirty (30) days after Coinmach Corporation actual receipt of a copy of the proposed lease, Coinmach Corporation has failed to notify LESSOR of Coinmach Corporations' agreement to match such offer. If Coinmach Corporation does so notify LESSOR of its agreement to match such offer within such thirty (30) day period, LESSOR agrees to lease the premises to Coinmach Corporation subject to the terms of the proposed lease.

11. LESSOR shall inform all subsequent owners of the property of the rights of LESSEE under this Lease.

12. In the event any action is instituted to enforce any provision of the Lease, the prevailing party shall be entitled to reasonable attorney fees, court cost and expenses.

13. This Lease shall be binding on the parties hereto, their heirs, executors, successors, assigns and personal representatives.

14. LESSOR and LESSEE acknowledge that this Lease Agreement is an extension, renewal, and modification of that certain Lease Agreement dated March 11, 1992 between De Narde Construction Co., LESSOR, and McNair's Coin Laundry Co.____, LESSEE. It is acknowledged that Bridge Management Co. has succeeded in interest as LESSOR, and Coinmach Corporation has succeeded in interest as LESSEE.

15. A labor charge of 5% of Gross Receipts will be deducted from LESSOR'S SUM if counting on site is required.

Lessor is:  __ Individual  X Partnership __ Corporation
Enter Social Security number or the Federal Identification number in the appropriate space.

SOCIAL SECURITY #_____          COMMISSIONS TO BE SENT TO:

FEDERAL I.D. # 87-0622122                    APARTMENTS X OWNER/AGENT_____
                87·0622122

LESSOR                                       LESSEE

BRIDGE MANAGEMENT CO.                         COINMACH CORPORATION

By Its Authorized Signatory                   By Its Authorized Signatory

DATE:  7-20·02                                DATE:  3-4-02

On this 20 day of February, 2002, Before me the Undersigned Authority, personally appeared Rich Stegner as the authorized signatories of the LESSOR and LESSEE, respectively, who being under oath, acknowledge before me that they executed the foregoing Lease for the uses and purposes therein and that the contents are true and correct.

Notary Public: Christie Pease
Commission Expires: Sept 7, 2002

CHRISTIE PEASE
NOTARY PUBLIC · STATE OF UTAH
4686 SOUTH 900 EAST
SALT LAKE CITY, UTAH  84117

GP 000005

**COINMACH CORPORATION**
**SUPPLEMENTAL AGREEMENT**

**LOCATION #3-6293**        **DATE: January 30, 2002**

  A one time Lease Bonus/Decoration Allowance of <u>Fourteen Thousand and no/100</u> ($14,000.00) Dollars will be made payable to <u>Bridge Management Co.</u> within forty-five (45) days after the installation of the equipment. Acceptance and deposit of the check for this amount is acknowledgment of receipt of payment. This Lease covers all coin operated laundry space in the multi-family community known as <u>Regatta</u> Apartments. LESSOR, <u>Bridge Management Co.</u> is owner or acting with full authority as owner's agent of this property.

  LESSOR warrants that the unearned prorate share of the lease bonus/decoration allowance will be refunded to LESSEE if LESSEE, for any reason should be required to remove its laundry equipment from these premises prior to the expiration of the original term of the Lease. The Original Lease was for a period of 120 months. Its monthly value is $116.67 for pro-ration determination. Also, in the event LESSOR installed, or causes to be installed, during the term of this Lease, washers and/or dryers in the units that are the subject of this Lease; LESSOR will notify LESSEE of such installation and return to the LESSEE the unearned pro-rata portion of the lease bonus/decoration allowance. The following formula will apply: (Number of units where washers and/or dryers have been installed, divided by the total number of units) multiplied by (the number of years remaining on the Lease, divided by the total years of the subject Lease) multiplied by (the original lease bonus/decoration allowance) equals the amount of money to be refunded by the LESSOR. The formula for pro rata determination delineated herein relates only to calculating pro rata return of the lease bonus/decoration allowance paid to LESSOR by LESSEE. Nothing stated herein affects in any way LESSEE'S right to receive compensation for lost income in the event of LESSOR'S breach of the lease agreement.

X _____  X _7-20-02_____
LESSOR:  BRIDGE MANAGEMENT CO.  Date:

_____  _3-4-02_____
LESSEE:  COINMACH CORPORATION  Date:

GP 000006

# TAB C

# DEFENDANT EXHIBIT

4

# COINMACH CORPORATION
## Memorandum of Lease

DATE April 22, 2002

STATE OF TEXAS
COUNTY OF TRAVIS

This instrument will evidence and when recorded serve **BRIDGE MANAGEMENT CO.** owner or acting with full authority as owners agent, hereinafter called LESSOR of the premises commonly known as **REGETTA APTS.**, located at **1201 TOWN CREEK DR., AUSTIN, TX 78741**

Lessor and **COINMACH CORPORATION**, as Lessee did execute a written Lease Agreement of real estate which provides in part that during the period therein set forth, Lessee has the right to occupy the real estate on which all laundry rooms are or will be situated on the land and premises named above under the terms and conditions of said lease

Copies of said Lease (which is incorporated herein by reference) are on file at the respective offices of Lessor and Lessee

Executed this 18 day of March 2003    COINMACH CORPORATION

BY _____
Mike Wester

Before me the undersigned authority on this day personally appeared Mike Wester, Regional Vice President of Coinmach Corporation, known to me to be the person whose name is subscribed to the foregoing instrument and acknowledged to me that he executed the same for the purposes and consideration therein expressed

Given under my hand and seal this 18 day of March 2003

Ima Jean Tiemann
Notary Public State of Texas
My Commission Expires August 7, 2004

IMA JEAN TIEMANN
MY COMMISSION EXPIRES
August 07, 2004

RETURN TO:
COINMACH CORPORATION
3501 Dime Circle Suite 101
Austin, Texas 78744-2300

# FILED AND RECORDED
### OFFICIAL PUBLIC RECORDS

03-25-2003  12 47 PM 2003065071
KNOWLESR $9 00
DANA DEBEAUVOIR , COUNTY CLERK
TRAVIS COUNTY, TEXAS

EXHIBIT
4

DEFENDANT'S
EXHIBIT
D

# TAB D

DEFENDANT EXHIBIT

13

## Assignment and Assumption of Leases and Service Contracts

Date: MAY 8 , 2007

Assignor: FOLEY CAPITAL ASSET, LLC, a California limited liability company

Assignor's Mailing Address: 6103 Avenida Picacho, Rancho Santa Fe, San Diego County, California 92067

Assignee: GRAYCO TOWN LAKE INVESTMENT 2007 LP, a Texas limited partnership

Assignee's Mailing Address: 55 Waugh Drive, Suite 500, Houston, Harris County, Texas 77007

Property (including any improvements): The real property more particularly described on Exhibit "A" attached hereto.

Leases: All residential leases to or on the Property.

Service Contracts: The contracts relating to the Property set forth on Exhibit "B" attached hereto.

Consideration: TEN DOLLARS ($10.00) and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged.

Assignor is conveying the Property to Assignee by warranty deed dated this date.

Assignor, for the consideration and subject to the Reservations from the Conveyance and the Exceptions to Conveyance and Warranty in the warranty deed, to the extent they affect the Leases, assigns to Assignee all of Assignor's right, title, and interest in and to the Leases and the Service Contracts. Assignor binds Assignor and Assignor's heirs and successors to warrant and forever defend all and singular the Leases and the Service Contracts to Assignee and Assignee's heirs, successors, and assigns against every person whomsoever lawfully claiming or to claim the same or any part thereof, except as to the Reservations from Conveyance and the Exceptions to Conveyance and Warranty in the warranty deed, to the extent they affect the Leases and the Service Contracts.

Assignee assumes and agrees to perform the landlord's obligations under the Leases and the owner's obligations under the Service Contracts arising after this date. The obligation to repay security and prepaid rental deposits to tenants under the Leases is limited to the amount of cash delivered or credited by Assignor to Assignee with respect to security and prepaid rental deposits. Assignee will indemnify, defend, and hold Assignor harmless from any loss, attorney's fees, expenses, or claims arising out of or related to Assignee's failure to perform any of the

4724520v.2 130169/00002





EXHIBIT
13

GP 000060

obligations of the landlord under the Leases or the obligations of the owner under the Service Contracts after this date.

Assignor will indemnify, defend, and hold Assignee harmless from any loss, attorney's fees, expenses, or claims arising out or related to Assignor's failure to perform any of the obligations of the landlord under the Leases or the obligations of the owner under the Service Contracts before this date.

When the context requires, singular nouns and pronouns include the plural.

ASSIGNOR:

FOLEY CAPITAL ASSET, LLC, a California limited liability company

By: _____
Name: TIM FOLEY
Title: MANAGING DIR

*[Signatures Continue on the Following Page]*

2

4724520v.2 130169/00002

GP 000061

ASSIGNEE:

GRAYCO TOWN LAKE INVESTMENT 2007 LP,
a Delaware limited partnership

By:     Grayco Project Town Lake GP LLC, its
        general partner

        By:     Grayco Partners, LLC, its sole
                member

                By: _____
                Name: _John J. Britton_
                Title: _Vice President_

*[End of Signatures]*

4724520v.2 130169/00002

GP 000062

## Exhibit "A"

### (Legal Description)

TRACT 1: Lot 4, Block "C" of Resubdivision of Lots 1, 2, 3 and 4, Block "C", TOWNLAKE PLAZA, a subdivision in Travis County, Texas, according to the map or plat thereof, recorded in Volume 49, Page 56 of the Plat Records of Travis County, Texas.

TRACT 2: Lots 5, 6, 7 and 8, Block "C", of TOWNLAKE PLAZA, a subdivision in Travis County, Texas, according to the map or plat thereof, recorded in Volume 18, Page 38 of the Plat Records of Travis County, Texas.

A-1

4724520v.2 130169/00002

GP 000063

## Exhibit "B"

## (Service Contracts)

1.  Gas Transportation Agreement dated February 19, 2003, with Texas Gas Service Company

2.  Vending Agreement dated January 8, 2003, with Vending Solutions, L.L.C.

3.  Communications Services Agreement dated May 15, 2001, with Grande Communications Networks, Inc.

4.  Contract for Services and Lease Agreement dated March 11, 1992, with Coinmach Corporation (as successor-in-interest of McNair's Coin Laundry Co.)

5.  Service Agreement dated March 28, 2002, with Waste Management of Texas, Inc.

6.  Ad Insertion Contract dated September 30, 2004, with Apartments for Rent

A-1

4724520v.2 130169/00002

GP 000064

# TAB E

CAUSE NO. C-1-CV-08-009655

| COINMACH, CORPORATION | § | IN THE COUNTY COURT |
|---|---|---|
| | § | |
| Plaintiff | § | |
| | § | |
| V. | § | AT LAW, NUMBER 1 |
| | § | |
| GRAYCO TOWN LAKE | § | |
| INVESTMENT 2007 LP | § | |
| | § | |
| Defendant | § | TRAVIS COUNTY, TEXAS |

## FINAL JUDGMENT

**CAME ON** the 20th of August, 2014, the above entitled and numbered cause wherein Coinmach Corporation ("Coinmach") is the Plaintiff and Grayco Town Lake Investment 2007, LP ("Grayco") is the Defendant. The parties appeared by and through their attorneys of record and announced ready to proceed.



All matters in controversy, both legal and factual, were submitted to the Court for its determination. The Court, having heard the evidence, including testimony and exhibits admitted into the record, and considering the arguments of counsel, has announced its decision in favor of the Plaintiff Coinmach. The Court hereby renders judgment in favor of Plaintiff Coinmach.

**IT IS THEREFORE ORDERED, ADJUDGED AND DECREED** that Coinmach have and recover damages from Defendant Grayco in the sum of $67,122.19, plus prejudgment interest in the amount of $19,695.31.

**IT IS FURTHER ORDERED, ADJUDGED AND DECREED** that Coinmach have and recover from Defendant Grayco its reasonable and necessary legal fees, which the Court finds to be the sum of $44,005.14 through the trial of this matter, including conditional awards of $2,500.00 in the event that Defendant Grayco files an unsuccessful

1

Motion for New Trial, and $5,000.00 in the event Defendant files an unsuccessful appeal to the Court of Appeals, and $5,000.00 in the event Defendant files an unsuccessful appeal or petition for review to the Texas Supreme Court.

All costs are taxed against Defendant Grayco. All amounts awarded herein and unpaid shall bear interest at the rate of 5% per annum from the date of this judgment until paid. This is a final judgment. All writs and process may issue to enforce same as allowed under Texas law.

IT IS SO ORDERED ON THIS ___6___ DAY OF NOVEMBER, 2014.

_____
JUDGE PRESIDING

for Eric Shepperd.

2

485

Agreed as to form and substance:

**KASLING, HEMPHILL, DOLEZAL
& ATWELL, L.L.P.**
301 Congress Avenue, Suite 300
Austin, Texas 78701
Telephone: (512) 472-6800
Telecopier: (512) 472-6823


By: _____
        R. Kemp Kasling
        State Bar No. 11104800

**ATTORNEYS FOR PLAINTIFF**

Agreed as to form only:

**DOBROWSKI, LARKIN & JOHNSON, L.L.P.**
4601 Washington Street, suite 300
Houston, Texas 77007
Phone: (713) 659-2900
Fax (713) 659-2908

By: _____
        Frederick Johnson
        State Bar No. 00785429
        Cody W. Stafford
        State Bar No. 24068238
        Akilah F. Craig
        State Bar No. 24076194

3

# TAB F

Filed: 12/8/2014 3:36:42 PM
Dana DeBeauvoir
Travis County Clerk
C-1-CV-08-009655
Andrea Scott

CAUSE NO C-1-CV-08-09655

| | | |
|---|---|---|
| COINMACH CORPORATION | § | IN THE COUNTY COURT |
| | § | |
| Plaintiff | § | |
| | § | |
| v. | § | AT LAW, NUMBER 1 |
| | § | |
| GRAYCO TOWN LAKE INVESTMENT 2007 LP | § § | |
| | § | |
| Defendant | § | TRAVIS COUNTY, TEXAS |

## DEFENDANT'S MOTION FOR NEW TRIAL

Defendant Grayco Town Lake Investment 2007 LP ("Town Lake"), requests the Court set aside the judgment in favor of Plaintiff Coinmach Corporation ("Coinmach"), and grant a new trial because—among other things—Town Lake did not breach the 2002 Lease.

### I.    INTRODUCTION

1.    This motion is filed within 30 days of the judgment in accordance with Rule 329b of the Texas Rules of Civil Procedure.

2.    The Court signed the judgment against Town Lake on November 6, 2014. The judgment awards Coinmach $67,122.19 in actual damages and $19,695.31 in attorneys' fees based on the Court's determination that Town Lake breached the 2002 Lease.

3.    The evidence admitted at trial, however, does not support the judgment; thus, the Court should order a new trial.

Case # C-1-CV-08-009655


489

## II.   ARGUMENT AND AUTHORITIES

4.   To recover on a claim for breach of contract, Coinmach must prove (1) that the defendant was a party to the contract, (2) that the defendant failed to perform a material obligation of the contract, (3) that the plaintiff performed or tendered performance (4) that the plaintiff was damaged as a result of the breach.   *New York Life Ins. Co. v. Miller*, 114 S.W.3d 114, 121 (Tex. App.—Austin 2003, no pet.). Here, Plaintiff admitted no competent evidence sufficient to support a finding on three of these elements. Alternatively, any finding by the Court on these elements is against the great weight and preponderance of the evidence, requiring a new trial.

### A. Grayco Was Not Party to or Bound by the 2002 Lease Because it Was, as a Matter of Law, a Good Faith Purchaser for Value Without Notice of the 2002 Lease

5.   A bona fide purchaser is one who buys property in good faith, for valuable consideration, and without notice, actual or imputed, of outstanding claims of a third party. *Swanson v. Grassedonio*, 647 S.W.2d 716, 718 (Tex. App.—Corpus Christi 1982, no writ); *Colvin v. Alta Mesa Res. Inc.*, 920 S.W.2d 688, 691 (Tex. App.—Houston 1996, no writ) (citing *Cooksey v. Sinder*, 682 S.W.2d 252, 253 (Tex. 1984)).

6.   Actual notice results from personal information or knowledge, as well as those facts which reasonable inquiry would have disclosed. *Fletcher v. Minton*, 217 S.W.3d 755, 758 (Tex. App.—Dallas 2007, no pet.). Constructive notice, on the other hand, is notice the law imputes to a person not having personal information or

2

knowledge. *Madison v. Gordon*, 39 S.W.3d 604, 606 (Tex. 2001). A purchaser has constructive notice of instruments recorded at the country clerk's office, and lying within the purchaser's chain of title. TEX. PROP. CODE § 13.002; *see also Porter v. Earnhart*, 343 S.W.2d 294, 297 (Tex. App.—Dallas 1960, writ ref'd n.r.e.).

7.     A bona fide purchaser of real property takes title free from any encumbrances of which the purchaser did not have actual or constructive notice. *See Smith v. Shamburger*, 273 S.W. 645, 646 (Tex. Civ. App.—Amarillo 1925, writ. dismissed); *see also Hampshire v. Greeves,* 130 S.W. 665, 668 (Tex. Civ. App. 1910) aff'd, 143 S.W. 147 (Tex. 1912); *see also Flack v. First Nat'l Bank*, 226 S.W.2d 628, 631 (Tex. 1950).

8.     In 2007, Grayco Partners, LLC ("Grayco") purchased the Regatta Apartments and assigned its interests to Town Lake. While a 1992 Lease was recorded in the Deed of Records for Travis County, it is wholly undisputed that the 2002 Lease was not recorded. Despite conducting a search of the real property records in Travis County, Texas, Grayco was not aware of the existence of the 2002 Lease because it had not been recorded.

9.     Grayco purchased the property in good faith, for value, without actual or imputed notice of the 2002 Lease. Because Grayco was a bona fide purchaser of the property, it cannot be held liable for the terms and conditions of the 2002 Lease, and likewise could not breach the 2002 Lease.

10.     Town Lake then acquired the property from Grayco free of any obligation to Coinmach on or about April 26, 2007. As the successor in interest to

3

491

Grayco, Town Lake acquired the property from a bona fide purchaser and, as such, cannot be held liable under the 2002 Lease. *Ball v. Presidio County*, 29 S.W. 1042, 1043 (Tex. 1895) ("To be a bona fide holder, one must be himself a purchaser for value without notice or the successor of one who was.").

11.    Consequently, Town Lake was not bound by the 2002 Lease and could not have breached the 2002 Lease. Alternatively, any finding that Town Lake was on notice (whether actual, constructive or inquiry notice) of the 2002 Lease is against the great weight and preponderance of the evidence. Thus, the judgment against Town Lake for a breach of the 2002 Lease is in error, and a new trial should be ordered.

**B. Grayco Did not Breach Any Material Obligation of the 2002 Lease**

12.    The judgment against Town Lake is in error because the evidence is legally and factually insufficient to prove Town Lake breached the 2002 Lease. Because there is a complete absence of evidence to support Coinmach's breach of contract claim, the evidence is legally insufficient to support the judgment. *Serrano v. Union Planters Bank, N.A.*, 162 S.W.3d 576, 580 (Tex. App.—El Paso 2004, pet. denied).

13.    Coinmach failed to identify a single term, clause, condition, or obligation in the 2002 Lease that Grayco breached. No provision of the 2002 Lease required Grayco to continue operating an apartment complex on the site or to maintain occupancy at a specified level. Coinmach's corporate representative, Ed Greene, testified that the 2002 Lease did not require Town Lake to maintain a

4

492

minimum occupancy level at the Regatta Apartments. Even under Coinmach's interpretation of the 2002 Lease, then, Town Lake could choose to renew—or not renew—as many tenant leases as it wished without breaching its contractual obligations to Coinmach.

14. Here, Town Lake's corporate representative, John Britton, testified that Town Lake had difficulty finding qualified tenants for the Regatta Apartments, which ultimately led to the decision to close and demolish Regatta. Coinmach then sued Town Lake for shuttering the Regatta Apartments. Under Coinmach's own understanding of the 2002 Lease, Town Lake had every right to lease-down, close, and demolish Regatta. Indeed, demolition of the property is no different from maintaining Regatta with minimum or zero occupancy—both have the effect of eliminating revenue for Coinmach. Neither scenario is prohibited by the 2002 Lease.

15. Further, Coinmach admitted that Town Lake had no obligation to ensure that the tenants at the Regatta Apartments actually used Coinmach's laundry machines. Coinmach admitted that the 2002 Lease did not require Town Lake to force the tenants to use the laundry room; thus, Coinmach had no contractual expectation for any future revenues. This is especially true when read in conjunction with Coinmach's own position that the 2002 Lease required no minimum occupancy.

16. Coinmach argues that an alleged lease-down of Regatta—which supposedly began *before* Town Lake even acquired the apartments—was a breach of

5

493

the 2002 Lease. But no provision of the 2002 Lease purports to impose a requirement that Grayco maintain a minimum occupancy level, as Coinmach admits.[1] Indeed, Coinmach's damages expert testified that he began calculating damages prior to the 2007 demolition based on this supposed breach. But, as discussed above, Coinmach admits that a lease-down would not be a breach of the 2002 Lease.

17. As a result, based on the plain language of the 2002 Lease—as well as Coinmach's own interpretation—Town Lake did not breach the 2002 Lease by either allegedly leasing-down Regatta, or by demolishing the property.

18. Alternatively, any finding of breach by Grayco is against the great weight and preponderance of the evidence.

## C. Coinmach Suffered No Damages

19. Even if Coinmach had proved Town Lake breached the 2002 Lease, Coinmach utterly failed to prove that it suffered any damages. As previously discussed, the 2002 Lease did not guarantee any minimum monthly earnings for the laundry machines. If tenants chose not to use the laundry machines, or there were no tenants to use them, the laundry machines would have had zero revenue, and Coinmach would not be entitled to anything else. As a result, Coinmach never had any contractually-guaranteed revenues.

20. Coinmach asked the Court to speculate as to what the revenue would have been, using the assumptions that there would be tenants to use the laundry

---

[1] The only way to impose such a requirement would be to impose it as a concomitant of the duty of good faith. Texas courts have unambiguously rejected the notion that there is a duty of good faith in an ordinary contract. *English v. Fischer*, 660 S.W.2d 551, 522 (Tex. 1983).

6

room and the tenants would, in fact, have used the laundry rooms but for Town Lake's supposed decision to lease-down and then demolish the Regatta Apartments.[2] But a party may not recover damages for breach of contract if those damages are remote, contingent, speculative or conjectural. *Southwest Battery Corp. v. Owen*, 115 SW.2d 1097, 1099 (Tex. 1938); *Pace Corp. v. Jackson*, 248 S.W.2d 340, 348 (Tex. 1955); *City of Dallas v. Village of Forest Hills, L.P., Phase I*, 931 S.W.2d 601, 605 (Tex. App.—Dallas 1996, no writ). Lost profits claimed as damages must be established to a reasonable certainty. *Holt Atherton Indus., Inc. v. Heine*, 835 S.W.2d 80, 84 (Tex. 1992).

21.    Based on the unrefuted testimony from Mr. Britton, occupancy at the Regatta Apartments was declining due to the terrible condition of the apartments. The conditions—which were present before Town Lake acquired the property—were such that vagrants had taken up residence at the Regatta Apartments. Coinmach has absolutely no basis to assume that there would have been tenants at the Regatta Apartments willing and able to use the laundry machines through the expiration of the 2002 Lease.

22.    Therefore, Coinmach's claim for damages fails for two reasons: (a) there were no provable damages suffered because Coinmach was not entitled to any specific amount of revenue or profits from the machines; and (b) any damages Coinmach claims it is entitled to are speculative at best.

---

[2] Notably, Coinmach's entire damages analysis is premised on supposed actions by Town Lake that even Coinmach admits were not breaches. This is fatal to Coinmach's claims.

23. Importantly, Coinmach's failure to prove its damages extends to both its breach of contract claim and its breach of the covenant of quiet enjoyment claim. Even assuming that Town Lake breached the covenant of quiet enjoyment, Coinmach suffered no damages for the same reasons that it suffered no damages from its breach of contract claim.

24. Alternatively, any finding that Coinmach suffered damages as a result of the alleged breach of the 2002 lease by Grayco is against the great weight and preponderance of the evidence.

### D. Coinmach Failed to Mitigate its Damages

25. The mitigation of damages doctrine requires an injured party, following a breach, to exercise reasonable care to minimize his damages. *Great Am. Ins. Co. v. N. Austin Mun. Util. Dist. No. 1*, 908 S.W.2d 415, 426 (Tex. 1995); *Walker v. Salt Flat Water Co.*, 96 S.W.2d 231, 232 (Tex. 1936). A plaintiff has a duty to use ordinary care and reasonable diligence to minimize its damages. *Geotech Energy Corp. v. Gulf States Telecomm. and Info. Sys., Inc.*, 788 S.W.2d 386, 390 (Tex. App.—Houston [14th Dist.] 1990, no writ).

26. When an injured party fails to comply with the duty to mitigate damages, recovery is not permitted as to that part of damages that could have been avoided or was incurred as a result of the failure to mitigate. *Pinson v. Red Arrow Freight Lines, Inc.*, 801 S.W.2d 14, 15 (Tex. App.—Austin 1990, no pet.) (citing *Alexander & Alexander of Tex., Inc. v. Bacchus Indus., Inc.*, 745 S. W.2d 252, 253 (Tex. App.—El Paso 1988, writ denied)).

8

27.     The evidence at trial, however, proved that Coinmach unreasonably failed to mitigate its damages.  For instance, Exhibit 15 is a letter from Town Lake—through its agent, Greystar—informing Coinmach of the decision to close Regatta, discussing the reasons behind the decision, and requesting Coinmach collect its laundry machines.[3] And Exhibit 16 is an email from Greystar again asking Coinmach to collect the washing machines and dryers prior to the demolition of Regatta. Coinmach admitted that it received these correspondences.

28.     Despite being provided with ample notice of Town Lake's intent to demolish the Regatta Apartments, Coinmach chose to ignore Town Lake's request, leave the laundry machines, and allow them to be demolished.  That decision is inexcusable because Mr. Greene admitted that Coinmach has, on occasion, removed laundry machines from one location and placed them in another location. Mr. Greene also testified that Coinmach could have collected the machines from the Regatta Apartments and placed them in another facility in order to generate revenue and offset the alleged damages suffered by Coinmach.

29.     Thus, Coinmach's failure to mitigate its damages bars its recovery of the amount awarded in the judgment.  Alternatively, any finding that Coinmach exercised reasonable diligence to mitigate its damages is against the great weight and preponderance of the credible evidence.

### III.   CONCLUSION

Town Lake proved it was a bona fide purchaser of the Regatta Apartments. As such, Town Lake was neither a party to nor bound by the obligations of the 2002

---

[3] All referenced exhibits were admitted at trial.

9

Lease. Alternatively, even if Town Lake was subject to the obligations of the 2002 Lease, the evidence Coinmach presented at trial is legally and factually insufficient to support its claim that Town Lake breached the 2002 Lease. Further, even if Town Lake breached the Lease, Coinmach suffered no damages and, in any event, completely failed to mitigate its damages, which precludes recovery. Because Coinmach failed to prove its contract claims against Town Lake, the award for attorneys' fees should also be vacated.

Therefore, Defendant, Grayco Town Lake Investments 2007 LP, asks the Court to vacate its judgment and grant a new trial.

Respectfully submitted,

**DOBROWSKI, LARKIN & JOHNSON LLP**

By:/s/ *Akilah F. Craig*

    Frederick T. Johnson
    SBN 00785429
    Cody W. Stafford
    SBN 24068238
    Leah N. Maxwell
    SBN 24073454
    Akilah F. Craig
    SBN 24076194
    4601 Washington Ave, Suite 300
    Houston, Texas 77007
    713.659.2900 – Telephone
    713.659.2908 – Facsimile

ATTORNEYS FOR DEFENDANT GRAYCO
TOWN LAKE INVESTMENT 2007 LP

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of **Defendant Grayco Town Lake Investment 2007, LP's Motion for New Trial** has been served on this 8th day of December, 2014 as follows:

VIA EMAIL AND FACSIMILE
R. Kemp Kasling
Kasling, Hemphill, Dolezal & Atwell, L.L.P.
301 Congress Avenue, Suite 300
Austin, TX 78701


/s/ Cody W. Stafford
Cody W. Stafford

11

499